497 P.2d 856

**William WHETTON, Plaintiff and Appellant,**

v.

**John W. TURNER, Warden, Utah State Prison, Defendant and Respondent.**

**No. 12675.**

Supreme Court of Utah.

May 30, 1972.

---

1. Chapter 28, L.U. 1961.

2. See Section 16-10-120, U.C.A. 1953 (Replacement Vol. 2) ; also see cases cited in the annotation in 75 A.L.R. beginning at page 465.

D. Gilbert Athay, Salt Lake Legal Defender Ass'n., Salt Lake City, for plaintiff and appellant.

Vernon B. Romney, Atty. Gen., David S. Young and William T. Evans, Asst. Attys. Gen., Salt Lake City, for defendant and respondent.

CROCKETT, Justice:

Plaintiff commenced this habeas corpus proceeding in the district court on December 24, 1970, seeking release from the State Prison where he is serving a sentence for second-degree murder after conviction by a jury eight years earlier, in December, 1962. He stated various claims for relief which turned out to be mainly that he did not have competent counsel, and that in proceedings prior to the trial he was subjected to improper questioning. In order to substantiate these claims he requested a transcript of the proceedings. This led to the discovery that the reporter's notes, which appear to have been filed in the county clerk's office eight years earlier, cannot be found. The inability to furnish that transcript is now the gravamen of his attack upon his conviction and con-

tention that he should be released from prison.

The fact is that the plaintiff was represented by an attorney of extensive experience in defending criminal cases.[1] It appears from the record in the instant case that he was able to obtain a verdict of second-degree murder which he thought might have been first-degree murder. Concerning the appeal from that conviction plaintiff testified herein:

THE COURT: You had a chance to appeal didn't you? Weren't you given that opportunity?

MR. WHETTON: No, sir, I was not because I was kept in the County Jail after the trial from December either the 3rd or 6th.

THE COURT: Did you confer with your attorney Mr. Hansen about it?

MR. WHETTON: Well, he came to me in the County Jail and he said that he had withdrawn the appeal and I raised hell with him.

I said, "you work for me. I don't work for you. Go put it back in."

And he said, "I can't." He said, "If I do you will be tried again for First Degree and shot."

I said, "I'll take the risk. Put it back in."

He said, "I can't." It was too late.

After a lapse of eight years the plaintiff attempted to persuade the trial court, and that failing, to persuade this court, mainly on the basis of his own self-serving assertions, that he was not accorded due process of law nor given a fair trial. In that regard there are several observations to be made. Our law provides for numerous and adequate protections of the rights of one suspected or accused of crime.[2] The judges and lawyers who put them into effect are professional people concerning whose competence and integrity there are also adequate safeguards. The very commitment of their lives is to the proper carrying out of the purposes of their calling and protecting the interests of those they serve. For these reasons, and based upon our own knowledge and experience, we deem it safe and proper to assume that proceedings have been carried on in conformity with the law. Accordingly, when there is no transcript as to what happened, we indulge that presumption;[3] and in the absence of persuasive proof, the trial court as the finder of the facts is not obliged to find to the contrary.

We do not desire to be so arbitrary as to say that in no instance would the lack of a transcript be deemed of critical importance. Common sense as to what fairness and justice demand should be ap-

1. Mr. Phil L. Hansen, who later served as Utah Attorney General, 1965 to 1969.

2. See Art. I, Sec. 12, Utah Constitution; and see statement concerning such rights in Gallegos v. Turner, 17 Utah 2d 273, 409 P.2d 386.

3. See Bennett Leasing v. Ellison, 15 Utah 2d 72, 387 P.2d 246.

plied to the circumstances shown. If it appears that there is any reasonable likelihood that there was some substantial failure to accord the accused the protections our law affords, or that there may have been a miscarriage of justice, such as, for example, where there may have been some chicanery or connivance to convict one innocent of crime, or a case of obvious mistaken identity, or some other such circumstance that it would be wholly unconscionable not to re-examine the conviction, then the best possible effort should be made to reconstruct the record and ascertain just what occurred.[4] This determination is to be made by the trial court, subject to the usual rules of procedure, and review by this court. Upon the basis of the record before us it is not made to appear that there is any likelihood that anything of that character exists in this case; and the trial court was well within his prerogative in the interests of justice in rejecting plaintiff's claims and denying his petition.[5]

Affirmed.

CALLISTER, C. J., and TUCKETT, HENRIOD and ELLETT, JJ., concur.

---

4. See Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891.

5. For statement of this court concerning limitations of habeas corpus when attempted to be used as subterfuge to avoid requirements of law and obtain review

on matters which could have been reviewed on timely appeal, see Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356; and Gallegos v. Turner, footnote 2 above; Jaramillo v. Turner, 24 Utah 2d 19, 465 P.2d 343.