The STATE of Utah, Plaintiff and
Respondent,

v.

Brian Edward MAGUIRE, Defendant
and Appellant.

No. 13386.

Supreme Court of Utah.

Dec. 10, 1974.

Larry R. Keller, Salt Lake Legal Defender Assn., Salt Lake City, for defendant and appellant.

Vernon B. Romney, Atty. Gen., M. Reid Russell, Earl F. Dorius, Asst. Attys. Gen., Salt Lake City, for plaintiff and respondent.

HENRIOD, Justice:

Appeal from a second-degree murder conviction by the court after defendant had waived a jury *on his own motion*. Affirmed.

Defendant had been charged with first-degree murder, but the trial court, on the

1. 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).

2. There are highly respected authorities that differ with that conclusion, under statutes like ours, included in which are: State v. Dicker-

strength of Furman v. Georgia,[1] advised defendant and his counsel that he considered the death penalty had been abolished by that case,[2] and hence dismissed the first-degree murder charge.

Defendant says 1) that his waiver of the jury trial was not knowingly or intelligently given, 2) that there was insufficient evidence to support the conviction, and that anyway 3) the lower court erred in allowing him to waive the jury where he had been charged with first-degree murder,—a capital offense.

The record in this case amply supports the conclusion that Points 1) and 2), above, are wholly without merit, and no purpose of consequence would be served simply to recount the facts supporting such conclusion.

As to 3), counsel for defendant makes an impressive and quite creditable argument, supported by some statutory and decisional authority,—which we believe, however, does not supercede that which we consider to be of better and more convincing reasoning and import, supportive of an affirmance of the lower court's decision.

Defendant points approvingly to the Furman case, which has inculcated a nest full of stormy jurisprudential warblers that not only plague the justices responsible for it, but those nationally, anent the death penalty. But we think, however, that Furman is inapropos here, since the law of that case did not concern itself with the question of waiver of the jury.

Counsel for defendant's thrust is that since the latter was *charged* with first-degree murder, he could, under no circumstances *waive* a jury even if he wanted to. This is something of a non sequitur, even though our Constitution, Article I, Section 10, says that "In capital cases the right of trial by jury shall remain inviolate," and

son, 298 A.2d 761 (Del.1972) ; State v. Waddell, 282 N.C. 431, 194 S.E.2d 19 (1973) ; and that question is now a pending subject of review on grant of certiorari by the U.S. Supreme Court.

even though that section is implemented by Title 77–27–2, Utah Code Annotated 1953, which says "Issues of fact must be tried by a jury, but in all cases *except where a sentence of death may be imposed* trial by jury may be waived by the defendant . . .." It would seem to be such a non sequitur, since the authorities generally state that a defendant effectively may enter a plea of guilty to an offense, including murder, unless incapable of doing so for some legitimate reason,—and such a plea certainly waives a jury trial,[3] irrespective of the provisions of 77–27–2, supra. Since such a recognized plea must be considered a prerogative of an accused, in reason and logic it should follow that he did not want a jury trial,—as defendant clearly has demonstrated here,—by asking that he *not* be tried by a jury,—for whatever personal reason he may have espoused.[4]

We think that because the Constitution gives him an "inviolate" right, necessarily does not mean that he has to accept it. In that sense, which is the only reasonable and fair sense we know attributable to the constitutional sanction, is to say it is a "privilege" and not a "mandate,"—elsewise a constitutional interdiction ordinarily designed for the preservation of one's sacred rights might be a vehicle carrying him to rites following his own destruction by sweet forced charity which forthrightly he has attempted to shun. Such conclusion aptly is echoed in Hoffman v. State,[5] where it was said that "what was given to him generally as a shield should not be used as a sword."

3. Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 74 L.Ed. 854 (1930); State v. Stewart, 110 Utah 203, 171 P.2d 383 (1946); People v. Duchin, 12 N.Y.2d 351, 239 N.Y.S. 2d 670, 190 N.E.2d 17 (1963).

4. 25 Michigan Law Review 695, which recounts some factors which might impel an accused to abandon an "inviolate" which he could but does not choose to assert,—a

We conclude that our constitutional protection of one's right of trial by jury is a privilege and favor which an accused may choose not to accept, as is his prerogative in waiving confrontation of witnesses, speedy trial, counsel, etc.—all guaranteed constitutional rights. Title 77–27–2, therefore, must pay homage to the language of its father,—and cannot by any implement put another wheel on his wagon or an appendage to his tongue.

No one has asserted unconstitutionality of the statute,—a question we need not resolve. Our only commitment here is that the statute must be read in the light of the constitution's wording, as interpreted here, and the part of it that may be surplusage or an excrescence is that severable part that seems to require something more than need be encompassed in the constitution.

In passing, without necessity to decide the point, it might be observed that defendant asked for what he got, and to use such voluntary request as a crowbar to release him from his predicament, is to invite error, a tactic or stratagem upon which courts frown or outrightly reject.

Furthermore, the first-degree murder charge was dismissed against defendant and was not tried. If the defendant's appeal were granted on the grounds he urges, he would subject himself not only to a jury trial, but to a first-degree murder trial,—an offense greater than that for which he was tried,—a gamble with much higher stakes involved. (Emphasis added.)

CALLISTER, C. J., and ELLETT, CROCKETT and TUCKETT, JJ., concur.

few of which might be: a revolting charge, unfavorable community reaction it might engender, revelation of past record, race prejudice, better knowledgeability of a judge in certain cases, greater confidence in the judiciary; and dozens of other kindred reasons personal to the accused.

5. 98 Ohio St. 137, 120 N.E. 234 (1918).