STATE of Utah, Plaintiff and
Respondent,

v.

Charles JOHN, Defendant and Appellant.

No. 15632.

Supreme Court of Utah.

Oct. 5, 1978.

George S. Diumenti, II of Peterson, Diumenti & Harward, Bountiful, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Michael L. Deamer, Craig L. Barlow, Asst. Attys. Gen., Salt Lake City, Robert L. Newey, Weber County Atty., Ogden, for plaintiff and respondent.

CROCKETT, Justice:

Defendant Charles John appeals from his conviction by a jury of manslaughter in causing the death of his 20-month old stepson, Ethan Arnold.[1] In attacking the conviction he asserts that the only evidence pointing to his guilt is circumstantial and that it is not sufficient to justify submitting the case to the jury, nor to support the verdict.

The events upon which this conviction is based occurred on July 18, 1977. At about 9:00 that morning, the defendant and his wife (Ethan's mother) dropped the child off with a babysitter, Pam Mills, and drove to a

---

1. In violation of U.C.A., 1953, 76-5-205.

medical clinic in Layton where the wife worked. He left his wife at the clinic and returned to pick up Ethan at about 10:30 a.m. It is without dispute that the defendant had the boy in his exclusive custody and was responsible for his welfare from that time until about 2:00 p. m., during which time Ethan suffered certain injuries referred to below.

After leaving the babysitter's home, the defendant stopped to inspect a construction job with which he was involved. The defendant, Ethan and one Verl Hansen, who owned a kennel near the construction site, went to a hardware store. While there, Ethan fell off a checkstand counter, although neither the defendant nor Mr. Hansen actually saw him fall. Both men testified that Ethan stopped crying when the defendant picked him up and that the boy was sleepy during the trip back to the kennel, where Mr. Hansen got out and the defendant drove home with Ethan.

Except for the defendant's own self-exculpating story, there is no direct evidence as to what occurred during the next two or three hours. Just before 2:00 p. m., the defendant put in a call for medical assistance. Ronald Grose, a paramedic who arrived at the home about 2:00 p. m. testified that the child had numerous bruises on his forehead, abdomen and legs and had two black eyes; and that he was having extreme difficulty in breathing. Mr. Grose gave him emergency treatment and took him to the hospital. Dr. Paul Taylor, who examined Ethan there also testified that the boy had numerous bruises "all over his body, on his legs, on his chest, on his abdomen."

Ethan's condition worsened. He underwent surgery early the next morning to relieve pressure on his brain. The surgeon, Dr. James Hauser, testified that the pressure was due to hemorrhaging which had resulted from a blow to the head. Despite the operation, Ethan died four days later.

An autopsy was performed by Dr. Serge Moore, the Chief State Medical Examiner.

He stated that, in his opinion, the victim's head had received a severe blow which caused massive hemorrhaging, which had occurred shortly before the child was brought to the hospital, and that it could have been caused by a hand or fist striking the head, but this would have to be while the head was stationary; and that it would not result from a fall. He also said that, from the nine substantial bruised areas on the child's body, he thought the latter was the victim of the "battered child syndrome."

The fact that these injuries occurred to the boy Ethan during that day while he was in the exclusive custody and care of the defendant is borne out by the testimony of Pam Mills, the babysitter, who testified that other than a black eye, the boy did not have any bruises when he was with her; and by Verl Hansen's similar testimony as to the appearance of the boy while he was with Ethan and the defendant.

It is not particularly surprising that the defendant testified to nothing which would incriminate himself as to what he did with Ethan during the next two hours. He says that he fed Ethan, who later became sick and vomited and then became "completely limp" before defendant called for help.

■ Defendant argues that it could reasonably be believed that Ethan's death was due either to an injury suffered in the fall at the hardware store, or by some other unobserved fall. In support of that argument, he urges that the only evidence pointing to his guilt is circumstantial and places reliance upon the rule that, where this is the case, in order to warrant a conviction the evidence must exclude every reasonable hypothesis other than the defendant's guilt.[2] That rule is sound and useful if correctly understood and applied. Crimes of this character, as in most types of serious misbehavior, are not usually committed in the presence of witnesses, but in such secrecy as the perpetrator can manage. For this reason, despite whatever weaknesses cir-

**2.** *State v. Hopkins,* 11 Utah 2d 363, 359 P.2d 486 (1961). See also *State v. Schad,* 24 Utah

2d 255, 470 P.2d 246 (1970); *State v. Romero,* Utah, 554 P.2d 216 (1976).

cumstantial evidence may have, it is recognized as a valid method of ascertaining the truth.[3]

■ The cautionary rule just referred to is but a specific application of the most basic principle in our criminal law: that an accused is presumed to be innocent until his guilt is proved beyond a reasonable doubt.[4] Consequently, if there is any reasonable view of the credible evidence which is reconcilable with the defendant's innocence, it would naturally follow that there would be a reasonable doubt as to his guilt.[5] But we emphasize that this does not mean just any view of any of the evidence, however unsubstantial or incredible, which a party to such a controversy may dream up.

■ The proper application of that rule requires that it be based upon what the jury regards as substantial and credible evidence.[6] This is necessarily true because in performing their duty as finders of the fact they are the exclusive judges of the credibility of the evidence.[7] In so doing, they may consider all of the facts affirmatively shown, as well as any unexplained areas, and draw whatever inferences may fairly and reasonably be drawn therefrom in the light of their own experience and judgment. In considering what happened in this case in accordance with the reasoning discussed above, the jurors could fairly and reasonably conclude that it was the defendant who, while he was alone with Ethan, so brutalized him that it resulted in his death.[8]

■ What has been said above is sufficient disposition of the defendant's attack upon the verdict as being based on circumstantial evidence. But there is another aspect of the evidence which deserves com-

ment. The defendant's neighbor, Gayle Maw, testified that two days after Ethan was taken to the hospital, she walked over to where the defendant was getting out of his truck and asked him how the baby was, to which the defendant answered that:

. . . he wasn't very good.

\* \* \* \* \* \*

I told him that all of the neighbors were hoping that everything would be all right, and that if he lived he wouldn't be a vegetable and you know. I didn't know what else to say to him. I had asked him what caused this, and he says it was a sharp blow to the head.

And I says, 'Well, I hope the baby makes it. We are all praying for him.'

And he said, 'Yes, I hope the baby makes it for his self [sake] and mine.'

And I said, 'Well, what do you mean?'

And he said, 'Because it he doesn't, it's second degree murder.'

These statements could well be regarded as admissions against interest, arising from defendant's sense of guilt and his apprehension of being prosecuted, and as supporting the jury's verdict.

Upon our survey of this record, it is our opinion that there was a reasonable basis in the evidence to justify the trial court in submitting the case to the jury, and thus to sustain its verdict; and that consequently, the ends of justice do not require that we disturb the judgment.

Affirmed. No costs awarded.

ELLETT, C. J., and MAUGHAN and HALL, JJ., concur.

3. See 30 Am.Jur.2d, Evidence, Section 1125; Commonwealth v. Paquette, 451 Pa. 250, 301 A.2d 837 (1973); State v. Loss, 295 Minn. 271, 204 N.W.2d 404 (1973).

4. State v. Quintana, 87 N.M. 414, 534 P.2d 1126 (1975); State v. Adams, 89 N.M. 737, 557 P.2d 586 (1976).

5. State v. Schad, supra note 2, at 247.

6. State v. Garcia, 11 Utah 2d 67, 355 P.2d 57 (1960).

7. State v. Hopkins, supra note 2; State v. Wilson, Utah, 565 P.2d 66 (1977).

8. State v. Loss, supra note 3, is a well-reasoned decision on facts similar to those here. It places emphasis on the fact that defendant was in the exclusive control and custody of the child prior to the report of the injuries which caused his death and holds this sufficient to justify the jury's guilty verdict.

WILKINS, Justice, concurring with reservation:

I do not agree with the majority opinion's comment that ". . . despite whatever weaknesses circumstantial evidence may have, it is recognized as a valid method of ascertaining the truth" because it implies that generally this class of evidence is inherently less reliable than direct evidence. I do however otherwise concur in the opinion.

The weight to be given to direct evidence is not—as a matter of law—necessarily greater than that given to circumstantial evidence. I believe an accurate statement of the law appears in *30 Am.Jur.2d, Evidence, Sec. 1126,* where it states:

> . . . Many decisions are to the effect that circumstantial evidence in a criminal case may be fully as satisfying as positive testimony and will sometimes outweigh it. In cases where the facts or circumstances which are proved are not only consistent with the guilt of the defendant, but also inconsistent with his innocence, such evidence, in its weight and probative force, may surpass direct evidence in its effect upon the jury. . . Circumstantial evidence deserves a like consideration as the sworn statements of a witness and may disprove the testimony of living witnesses, and there is nothing in the nature of circumstantial evidence that renders it less reliable than other classes of evidence. [Citations omitted.]