STATE of Utah, Plaintiff and Appellee,

v.

Michael Charles LAYMAN, Defendant and Appellant.

No. 960814–CA.

Court of Appeals of Utah.

Jan. 29, 1998.

Alan M. Williams, Vernal, for Defendant and Appellant.

Jan Graham and Kris C. Leonard, Salt Lake City, for Plaintiff and Appellee.

Before BENCH, GREENWOOD and ORME, JJ.

## OPINION

GREENWOOD, Judge:

Michael Charles Layman (Layman) appeals his convictions of driving under the influence of alcohol or drugs, a class B misdemeanor, in violation of Utah Code Ann. § 41-6-44 (Supp.1996); possession of a controlled substance with intent to distribute, a second degree felony, in violation of Utah Code Ann. § 58-37-8 (Supp.1996); and possession of paraphernalia, a class B misdemeanor, in violation of Utah Code Ann. § 58-37a-5 (1996). We affirm Layman's conviction for driving under the influence but reverse his convictions for possession of a controlled substance with intent to distribute and possession of paraphernalia.

## BACKGROUND [1]

■ On August 11, 1996, Layman and his father, Hobart Layman (Hobart), went to the home of Gina Ziegenhirt (Gina) in Ogden. Hobart asked Gina if she wanted to go with them to Vernal and make some money on the sale of methamphetamine. Gina had not previously met Layman, and Layman was apparently upset with Hobart for inviting Gina on the trip. However, on the way to Vernal, Layman and Gina talked about the difficulty each was having with the state in connection with their respective children.

Upon arriving in Vernal in the early morning of August 12th, the three went directly to a motel. While there, Gina saw Hobart in the bathroom with drugs, and heard him complain that his scales were not working correctly. The three remained at the motel approximately twenty minutes. Layman and Gina then dropped Hobart off, at which time Hobart handed Gina a pouch containing drugs and paraphernalia. Hobart said he would call Layman at Layman's sister's house when it was time to pick him up. Gina assumed the drugs Hobart gave her were hers and Hobart's.

At approximately 3:00 a.m., after dropping Hobart off, Layman was stopped by Deputy Shaun Abplanalp, who noticed that one of Layman's taillights was not working. As Abplanalp prepared to make the traffic stop, Layman jerked his car suddenly to the right, as if to pull off the road, and then to the left, before stopping his car in a position perpendicular to the police car. Layman then walked "briskly" toward the deputy, and, apparently upset after being told about the taillight, opened the car trunk and tried to fix it. Layman's eyes were red, bloodshot, watery and glassy, and he appeared very anxious and fidgety, unable to remain in one location for any length of time.

In response to Abplanalp's question, Layman told the deputy he had no controlled substances, paraphernalia, or open containers in his car and consented to a search of the vehicle. A quick pat search of Layman revealed no weapons. Abplanalp did, however, observe a black holster-type pouch stuffed in Gina's waistband. The deputy made several attempts to obtain the pouch from Gina. Gina repeatedly looked nervously toward Layman and, on one of those occasions, the deputy observed Layman shaking his head in a negative fashion back and forth. When Abplanalp finally obtained the pouch, he found it contained numerous syringes, a spoon, a large baggy of methamphetamine, and a set of plastic scales. Two of the syringes had been used. The quantity of methamphetamine found in the pouch was more than one would have for one's personal use. However,

---

1. When reviewing a bench trial, "[w]e recite the facts from the record most favorable to the findings of the trial court." *State v. Moosman,* 794 P.2d 474, 476 (Utah 1990).

at no time did Deputy Abplanalp see the pouch or its contents in Layman's physical custody and at no time during the course of the stop did he observe any movements indicating Layman had handed anything to Gina.

Deputy Abplanalp was soon joined by Deputy DeCamp, who conducted a series of field sobriety tests on Layman. Based on those tests, DeCamp concluded Layman was incapable of safely operating a motor vehicle. DeCamp took Layman to jail, where DeCamp conducted a drug recognition evaluation on Layman and concluded Layman was under the influence of a stimulant. Abplanalp then took Layman to Ashley Valley Medical Center for a blood draw. Both deputies, at some point, observed needle marks on Layman's arms. The results of the blood test, admitted into evidence by stipulation, indicated the presence of methamphetamine in Layman's blood stream.

On August 20, 1996, Layman was charged with driving under the influence of alcohol or drugs, possession of a controlled substance with intent to distribute, and possession of paraphernalia. A bench trial was held on December 10, 1996, and the trial court found Layman guilty on the three counts. This appeal followed.

## ISSUES

On appeal, Layman raises essentially three issues. In connection with his conviction for driving under the influence, Layman asserts (1) the trial court erred in considering the toxicology reports, even though Layman stipulated to their admission into evidence, because the State presented no foundational evidence as to the tests' reliability; and (2) the trial court erred in admitting the expert opinion testimony of Deputy DeCamp concerning Layman's intoxication without first analyzing that testimony under the test set forth in *State v. Rimmasch*, 775 P.2d 388, 396–99 (Utah 1989). In connection with his convictions of the drug-related possession crimes, Layman (3) challenges the sufficiency of the evidence supporting the trial court's finding of constructive possession.[2]

2. In his brief, Layman also challenged the trial court's reference to a "common enterprise" in its

## ANALYSIS

### Driving Under the Influence

Layman challenges his conviction for driving under the influence, claiming the trial court erred both in giving any weight to toxicology reports admitted into evidence by stipulation, and in allowing expert testimony from Deputy DeCamp without first submitting that testimony to the *Rimmasch* analysis.

#### 1. Toxicology reports

Although Layman stipulated to the admission of the toxicology reports concerning the drugs in his system and those found in Gina's pouch, he now challenges the trial court's decision to give any weight to those reports because the State failed to produce evidence that the underlying tests were performed properly.

■■■ The "invited error" doctrine " 'prohibits a party from setting up an error at trial and then complaining of it on appeal.' " *State v. Perdue*, 813 P.2d 1201, 1205 (Utah Ct.App.1991) (citation omitted); *see also State v. Dunn*, 850 P.2d 1201, 1220 (Utah 1993) ("[A] party cannot take advantage of an error committed at trial when that party led the trial court into committing the error."). Furthermore, once evidence is admitted, it is for "[t]he trier of fact [to] consider the degree to which [foundational evidence has been presented] and apply that toward the weight and reliability of the evidence." *State v. Moosman*, 794 P.2d 474, 481 (Utah 1990).

■■■ In this case, Layman stipulated to the admission of the toxicology reports and did not specifically object to the lack of foundational evidence supporting the reports. Furthermore, Layman did nothing to dispel the State's understanding that the very reason for the stipulation was to accelerate Layman's trial date by removing the need for the State to call witnesses to describe the testing procedures. Through his actions, then, Layman invited any error which the trial court may have made in admitting the toxicology

findings of fact. Because of our disposition of this case, we need not address that challenge.

reports. Furthermore, once they were admitted, it was within the trial court's discretion to determine what weight to accord those reports.

### 2. Deputy DeCamp's expert testimony

Layman claims the trial court erred in admitting Deputy DeCamp's testimony regarding Layman's intoxication without first analyzing that testimony under the test set forth in *State v. Rimmasch*, 775 P.2d 388, 396–99 (Utah 1989). We agree with the State, however, that the *Rimmasch* analysis applies only to expert testimony based on scientifically derived facts or determinations, and not to an expert's personal observations and opinions based on his or her education, training, and experience.

This court has held a *Rimmasch* analysis is required to determine "the admissibility of testimony based on an external scientific process or statistical profile." *State ex rel. G.D., Jr. v. L.D.*, 894 P.2d 1278, 1284 (Utah Ct. App.1995). Where the expert testimony is opinion testimony based on the witness's training and experience, *Rimmasch* is not applicable, "as there [is] no scientific process on which to apply such an analysis." *Id.; see also Salt Lake City v. Garcia*, 912 P.2d 997, 1000–01 (Utah Ct.App.) (finding no error where trial court allowed testimony on result of field sobriety test without entertaining *Rimmasch* analysis, and court specifically informed jury this was not scientific evidence but rather was "part of the basis of the arresting officer's opinion that the defendant was under the influence"), *cert. denied*, 919 P.2d 1208 (Utah 1996).

Furthermore, a trial court "has wide discretion in determining the admissibility of expert testimony, and this court will not overturn the trial court's determination unless the trial court exceeded its permissible range of discretion." *State ex rel. G.D.*, 894 P.2d at 1284 (citing *State v. Larsen*, 865 P.2d

1355, 1361 (Utah 1993)). We thus conclude the trial court did not err in admitting De-Camp's testimony.

### *"Constructive Possession"*

Layman challenges the sufficiency of the evidence in connection with his convictions for possession of a controlled substance with intent to distribute and possession of paraphernalia. In both cases, Layman argues that the trial court lacked sufficient evidence to find he constructively possessed the contraband.

" 'When reviewing a bench trial for sufficiency of evidence, we must sustain the trial court's judgment unless it is "against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made." ' " *State v. Reed*, 839 P.2d 878, 879 (Utah Ct.App.1992) (citations omitted). " 'For a reviewing court to find clear error, it must decide that the factual findings made by the trial court are not adequately supported by the record, resolving all disputes in the evidence in a light most favorable to the trial court's determination.' " *Jouflas v. Fox Television Stations*, 927 P.2d 170, 174 (Utah 1996) (quoting *State v. Pena*, 869 P.2d 932, 935–36 (Utah 1994)). However, "[w]here the only evidence presented against the defendant is circumstantial, the evidence supporting a conviction must preclude every reasonable hypothesis of innocence. This is because the existence of a reasonable hypothesis of innocence necessarily raises a reasonable doubt as to the defendant's guilt." *State v. Hill*, 727 P.2d 221, 222 (Utah 1986) (plurality opinion) (citing *State v. Romero*, 554 P.2d 216, 219 (Utah 1976)).[3]

In this case, the trial court relied solely on circumstantial evidence to establish that Layman constructively possessed the drugs and paraphernalia found on Gina's

---

**3.** We believe this requirement is consistent with the Utah Supreme Court's recent enunciation of the rule:

> When, as here, the evidence consists solely of undisputed, circumstantial evidence, the role of the reviewing court is to determine (1) whether there is any evidence that supports each and every element of the crime charged,

and (2) whether the inferences that can be drawn from that evidence have a basis in logic and reasonable human experience *sufficient* to prove each legal element of the offense *beyond a reasonable doubt*.

*State v. Workman*, 852 P.2d 981, 985 (Utah 1993) (emphasis added); *see also State v. Brown*, 948 P.2d 337, 345 (Utah 1997).

person. We thus review the evidence to determine whether it excludes all reasonable hypotheses of Layman's innocence.[4] Even considering the evidence and all reasonable inferences therefrom in a light most favorable to the trial court's judgment, we conclude it does not. We believe, instead, that the trial court's judgment rests on a fundamental assumption for which the record contains no evidence; that assumption then allowed the court "to indulge an inference upon an inference that could lead but to conjecture not justifying a conclusion that [possession had been proven] beyond a reasonable doubt and to the exclusion of any [other] reasonable hypothesis." *State v. George*, 25 Utah 2d 330, 481 P.2d 667, 667 (1971).[5]

Conviction of possession with intent to distribute requires proof of two elements: "(1) that defendant knowingly and intentionally possessed a controlled substance, and (2) that defendant intended to distribute the controlled substance to another." *State v. Fox*, 709 P.2d 316, 318 (Utah 1985) (citing Utah Code Ann. § 58–37–8(1)(a)(ii)). "[P]ossession of a controlled substance sufficient to sustain a conviction need not be actual but may be constructive." *State v. Bingham*, 732 P.2d 132, 133 (Utah 1987). "In order to prove constructive possession, there must be a nexus between the accused and the drug sufficient enough to allow an inference that the accused had both the ability and the intent to exercise dominion and control over the drug." *State v. Salas*, 820 P.2d 1386, 1388 (Utah Ct.App. 1991) (citation omitted). "The sufficiency of the nexus ... depends upon the facts and circumstances of the case." *Id.* (citation omitted). Furthermore, "persons who might know of the whereabouts of illicit drugs and who might even have access to them, but who have no intent to obtain and use the drugs cannot be convicted of possession." *Fox*, 709 P.2d at 319. "Knowledge and ability to possess do not equal possession where there is no evidence of intent to make use of that knowledge and ability." *Id.* Thus, the evidence "must raise a reasonable inference that the defendant was engaged in a criminal enterprise and not simply a bystander." *Id.* at 320.

Finally, "[a] sufficient nexus is not established by mere '[o]wnership and/or occupancy of the premises upon which the

4. Although we agree with the dissent that "[t]he existence of one or more alternate reasonable hypotheses does not necessarily prevent the [fact finder] from concluding that defendant is guilty beyond a reasonable doubt," *State v. Blubaugh*, 904 P.2d 688, 695 (Utah Ct.App.1995), *cert. denied*, 913 P.2d 749 (Utah 1996), we also note that in *Blubaugh*, the jury was presented with conflicting evidence supporting the different hypotheses; in such instances, "it is within the province of the jury to judge the credibility of the testimony, assign weight to the evidence, and reject these alternative hypotheses." *Id.* at 694–95; *see also State v. John*, 586 P.2d 410, 412 (Utah 1978) (noting where defendant presents alternative hypothesis that conflicts with State's evidence, jurors "are the exclusive judges of the credibility of the evidence" and thus may reject hypothesis lacking in "substantial and credible evidence."). This seems especially appropriate where, in cases such as *Blubaugh* and *John*, the circumstantial evidence "is of such quality and quantity as to justify a [fact finder] in determining guilt beyond a reasonable doubt." *State v. Nickles*, 728 P.2d 123, 127 (Utah 1986); *see also State v. Span*, 819 P.2d 329, 332 (Utah 1991). We do not believe the "quality and quantity" of evidence in the present case meets that threshold.

5. The trial court stated:

Count 2, that's a harder case for me. I guess my finding [on the possession charge] is that this defendant was involved in a common enterprise. From the testimony that I have heard here, whether he had contributed cash or vehicle or acted as the driver, they all had a common mission in coming to Vernal, and that taken together with his dominion, with his involvement in the trip, with his possession of it in the motel room, with his apparent dominion of it, even though this witness, this other witness testified that she was given the meth to hold by Hobart, she was hesitant to testify here that this defendant had an interest in it. But I think it's obvious from the joint enterprise they were on that he, in fact, had an interest in it. The quantity was a distribution quantity. That taken together with the scales and the paraphernalia, I don't know, I guess the paraphernalia, the only evidence of this is evidence that the defendant had used both, again, from the toxicology report, the blood test, and the observations of the officers who were trained and [sic] identifying people whoever's high on speed, convince me that the paraphernalia was actually, probably, beyond a reasonable doubt used by Layman on this evening. I find him guilty on all counts and beyond a reasonable doubt standard.

drugs [were] found ... especially when occupancy is not exclusive.'" *Salas*, 820 P.2d at 1388 (quoting *Fox*, 709 P.2d at 319) (alterations in original); *see also State v. Anderton*, 668 P.2d 1258, 1263–64 (Utah 1983) (Durham, J., joined by Stewart and Howe, JJ., concurring separately in result); Emile F. Short, Annotation, *Conviction of Possession of Illicit Drugs Found in Automobile of Which Defendant Was Not Sole Occupant*, 57 A.L.R.3d 1319, 1323 (1974) (stating "defendant's mere presence in an automobile in which illicit drugs are found would not, without more, sustain his conviction of possession of such drugs."). Thus, "[i]n order to find that the accused was in possession of drugs found in an automobile he was not the sole occupant of, and did not have sole access to, there must be other evidence to buttress such an inference." *Salas*, 820 P.2d at 1388. Evidentiary factors "linking or tending to link an accused with drugs" include "incriminating statements, suspicious or incriminating behavior, sale of drugs, use of drugs, proximity of defendant to location of drugs, drugs in plain view, and drugs on defendant's person." *Id.* (footnote omitted). Again, however, where the conviction rests on circumstantial evidence alone, the evidence must be sufficient to justify exclusion of any reasonable inference of a defendant's innocence. *See State v. Romero*, 554 P.2d 216, 219 (Utah 1976) ("When the only proof of presumed facts consists of circumstantial evidence, the circumstances must reasonably preclude every reasonable hypothesis of defendant's innocence.").

In *Salas*, the defendant was stopped while driving a vehicle with two passengers. *See id.* at 1387. After being told of the officers' suspicion that the defendant was in possession of drugs, the defendant denied the presence of drugs in his car and consented to a search of it. *See id.* The search revealed drugs "in the crack of the backseat on the driver's side, where the bottom of the cushion fits the back." *Id.* This court found the evidence insufficient to support a conviction of the driver for possession of a controlled substance based on constructive possession:

> Although defendant owned and occupied the vehicle, the ownership and occupancy were not exclusive. Defendant's wife was a co-owner ... and there were two passengers in the vehicle at the time of arrest. One passenger had better access to the spot where cocaine was found than did defendant. Further, defendant denied the presence of cocaine before the search, did not try to escape the scene during the search, denied putting the cocaine in the vehicle after it was discovered, and did not have drugs or drug paraphernalia on his person at the time of arrest. The drug itself was found in an area that was not easily accessible to the defendant. There had been a backseat passenger close to where the drug was found, and this passenger was seen moving around in a furtive manner just before the traffic stop.... Neither [officer] testified that defendant carried a package to his vehicle, talked suspiciously with the other passengers, was in the back seat or reached to the back seat, or that defendant's behavior was suspicious in any way.

*Id.* at 1389. This court found the evidence "inconclusive as to whether defendant knew of or possessed the cocaine." *Id.*

Similarly, in *Anderton*, the majority found insufficient evidence to convict a wife of constructive possession where she owned a home jointly with her husband, where numerous marijuana plants and bags of "green plant material" were found in the home, and where the husband denied his wife's involvement in any of the drug activity. *See Anderton*, 668 P.2d at 1259. The majority noted:

> Some of the key factual determinations which have supported findings of constructive possession in other cases are: 1) defendant's presence at the time the drugs were found, with emphasis on the fact that the drugs were in plain or open view; 2) the defendant's access to the drugs; 3) the proximity of defendant to the drugs; 4) evidence indicating that the "defendant was participating with others in the mutual use and enjoyment of the contraband"; and 5) incriminating statements.

*Id.* at 1264 (citations omitted).

Furthermore, the finding of any one of the evidentiary factors highlighted above is not determinative; that evidence must still be

considered within the totality of the circumstances presented. Thus, in *People v. Mason*, 213 Ill.App.3d 163, 157 Ill.Dec. 108, 571 N.E.2d 1127 (1991), the court found insufficient evidence to support a conviction based on constructive possession although the defendant was the driver of a car with two passengers, police found three telephone beepers on defendant's person, drugs and money were found on the person and in the jacket of one of the passengers, and that passenger testified the defendant knew nothing of the drugs. *See id.*, 157 Ill.Dec. at 109–10, 571 N.E.2d at 1128–29. The court noted "[t]here was no evidence presented to show that the jacket belonged to the defendant or that he had possession of the jacket, let alone the drugs, at any time." *Id.*, 157 Ill.Dec. at 111, 571 N.E.2d at 1130.

■ In this case, the direct evidence [6] shows that Layman used his car to drive Hobart and Gina to Vernal. While Hobart slept on the trip, Layman and Gina talked about their experiences involving their respective children and the state. No evidence was presented to indicate they discussed drugs during the drive. Upon arriving in Vernal, the three stopped at a motel. After some twenty minutes there, they left the motel and Layman and Gina dropped Hobart off at another location. Before leaving, Hobart handed Gina a pouch, which she believed contained items that belonged to her and Hobart. Hobart then said he would call Layman at Layman's sister's house when it was time to pick him up.

Almost immediately upon dropping Hobart off, Layman was stopped by Deputy Abplanalp for a faulty taillight. Layman's auto jerked to the right and then to the left before stopping perpendicular to the police car. Layman then briskly approached Abplanalp to ask why he was stopped, and, appearing upset, tried to fix the faulty light. Layman appeared fidgety and anxious, and his eyes were red, bloodshot, and watery.

Layman denied he had either drugs or alcohol in his vehicle, and consented to a search of himself and his car. During Abplanalp's attempt to obtain the pouch from Gina, however, Gina continuously looked toward Layman, who at one point appeared to shake his head in a negative fashion.

Field sobriety tests and a drug recognition evaluation indicated Layman was under the influence of drugs; this indication was later confirmed by a blood test. Both deputies who questioned Layman noticed needle marks on his arms.

Although this evidence more than adequately supports a conclusion that Layman was under the influence of drugs, it does not support, beyond a reasonable doubt, a finding that Layman had the knowledge, ability, and intent to exercise dominion and control over the contraband found on Gina's person.

The State produced no evidence, direct or circumstantial, supporting its claims—beyond a reasonable doubt, as it must—that Layman knew about Hobart's drug transactions or the contents of Gina's pouch, or, more importantly, that Layman had or could have exercised any dominion and control over the contraband in the pouch, or that he intended to exercise such control. There is not a sufficient quality or quantity of evidence—direct or otherwise—indicating or from which a fact finder could infer that Layman was present at any time during which Hobart and Gina discussed their drug transaction,[7] that he

---

6. The dissent argues that our reference to direct evidence removes this case from the somewhat distinct standard of review applicable to cases based purely on circumstantial evidence. However, we distinguish between "direct" evidence as to the elements of a crime and "direct" evidence that supports certain facts or inferences that then constitute circumstantial evidence as to the elements of a crime. In *Romero*, the "direct" evidence consisted of eyewitness testimony of the defendant's participation in criminal activity. *See Romero*, 554 P.2d at 219–20 ("In the instant case, the identification of defendant by two eyewitnesses constitutes direct evidence from which other facts could be presumed."). Here, the "direct" evidence does not go directly to the element sought to be proven—possession—but rather, goes to the establishment of circumstantial evidence upon which the State bases its case.

7. The only evidence in the record indicates that, except for a brief use of Gina's bathroom, Layman remained in his car when Hobart discussed the drug transaction with Gina. Although the trial court may reject Gina's testimony as not credible, it cannot substitute its belief as to the truth of evidence not in the record.

was aware he was driving his father to Vernal to complete that transaction, that he was present in the motel room or within hearing range while Hobart weighed and discussed the drugs with Gina,[8] or that he was aware of the contents of the pouch that Hobart had given Gina.

 Given this pivotal deficiency in the State's case, the circumstantial evidence presented does not sufficiently exclude reasonable alternative hypotheses of Layman's innocence.[9] The State points to Layman's contributing his car and time in driving Hobart and Gina to Vernal. However, the State does not exclude the possibility that Layman may have just been doing his father a favor by driving to Vernal, or that Layman may have agreed to drive because he wanted to see his sister, who apparently lives in Vernal and to whose house Layman was heading at the time of his traffic stop. *See Arellanes v. United States,* 302 F.2d 603, 606–07 (9th Cir.1962) (stating evidence that wife was present with husband at time drugs were found in car and that she was probably aware of presence of drugs was not sufficient to establish elements of joint venture where her presence with husband and drugs "is as fully explained by her attachment to her husband as it might be by a control over the drugs."); *State v. Shipp,* 216 N.J.Super. 662, 524 A.2d 864, 866 (App.Div.1987) (stating "members of the same · family commonly travel together in the same automobile, and the fact that these two were together on this occasion is no more consistent with the prop-

osition that defendant was a participant in [his grandmother's] criminal enterprise than that he was not.").

Alternatively, the State directs our attention to Layman's erratic behavior immediately after the traffic stop. However, the State does not explain why that behavior is not consistent with the sole fact that Layman was under the influence of drugs at the time of the stop. Although the State argues that Layman's behavior was incriminating, the evidence and reasonable inferences drawn therefrom undermine that conclusion: Layman did not attempt to flee after being stopped; he denied the presence of drugs in his car; in fact, no drugs were found either in his car or on his person; and Deputy Abplanalp saw neither the pouch or its contents in Layman's physical custody, nor any movements indicating Layman had handed anything to Gina. *See Scruggs v. Commonwealth,* 19 Va.App. 58, 448 S.E.2d 663, 664 (1994) (stating, in reviewing evidence in constructive possession case, " 'we cannot ... disregard credible, unimpeached evidence of the [State] which exculpates the defendant and creates a reasonable doubt.' " (citation omitted)); *see also People v. Boddie,* 274 Cal.App.2d 408, 80 Cal.Rptr. 83, 85 (1969) ("In short, all we have is evidence that defendant, while under the influence of narcotics, was a passenger in an automobile being driven by a person also under the influence of narcotics, in which car narcotics were found in the glove compartment.").

---

8. Except for indicating that Layman used the motel bathroom in which Hobart weighed out the drugs *prior to Hobart's using it,* the evidence makes no further reference to Layman's actions or location while the three were at the motel. The testimony only addresses Hobart's activities and interactions with Gina.

9. Although we agree with the dissent's assertion that, generally, "it is only when the defendant asserts an alternative hypothesis, does the State bear the burden of disproving it," we dispute the dissent's suggestion that there exists a per se rule that "the State need only disprove alternative hypotheses raised at trial." Such a rule is appropriate where the State has presented at least a minimum quantum of evidence establishing the elements of the crime. *See State v. Shabata,* 678 P.2d 785, 791 (Utah 1984) (noting that *"[a]gainst the ample evidence of guilt in this case, ...* [n]one of [defendant's] arguments identifies a reason-

able hypothesis alternative to defendant's guilt." (emphasis added)). However, the rule does not appear appropriate where the State has not presented a sufficient quantum of evidence to establish such elements. *See George,* 481 P.2d at 667–68 (reversing conviction where circumstantial evidence required jury "to indulge an inference upon an inference that could lead but to conjecture," stating "[w]e believe that there are other hypotheses inconsistent with a larceny that could be constructed out of the tenuous facts extant here," and noting "that the [trial] court itself suggested the matter of reasonable doubt and supplied a hypothesis itself that reasonably is inconsistent with larceny."); 481 P.2d at 668 (Ellett, J., dissenting, joined by Crockett, J.) (noting "defendants made no explanation—satisfactory or otherwise—of their possession of the [stolen goods]").

The State also asserts that his drug use supports a conclusion that Layman must have had access to and control over the drugs and paraphernalia found on Gina's person. *See Anderton,* 668 P.2d at 1264 (noting defendant's participation "with others in the mutual use and enjoyment of the contraband" is one factor which may indicate constructive possession). However, the State presented no evidence suggesting that Hobart or Gina shared in Layman's drug use or that either received any enjoyment from Layman's use.[10] With this lack of "mutual use and enjoyment," which might otherwise support an inference of joint participation in a criminal enterprise, one could reasonably hypothesize that Hobart had given Layman some methamphetamine—perhaps even before the trip began—as thanks for his driving and that Layman had consumed this gift of drugs prior to getting back on the road after the motel stop.

Finally, the State urges that Layman's shaking his head during Abplanalp's search of Gina indicated knowledge and some type of control over the drugs and paraphernalia on Gina's person. However, equally plausible is the explanation that Layman was just upset with his having been stopped with drugs in his system, or that he was frustrated the deputy was not leaving Gina alone, or, that he was angry that he surely was not going to make it back to Salt Lake City in time to pick up his son, as originally planned. Indeed, even if Layman were aware of the contents of the pouch, he may have just been giving Gina advice, through body language, not to incriminate herself, or he may merely have been upset at the imminent discovery by the deputy and the subsequent hassle it would cause him because he was with the woman carrying it. *See Fox,* 709 P.2d at 319 ("[P]ersons who might know of the whereabouts of illicit drugs and who might even have access to them, but who have no intent to obtain and use the drugs cannot be convicted of possession."); *Shipp,* 524 A.2d at 866 ("[M]ere knowledge, without more, on the part of one automobile passenger that a co-passenger is carrying illicit drugs does not constitute the former a co-possessor.").

■ In challenging our conclusion, the dissent argues that we have inappropriately isolated each bit of circumstantial evidence in order to more easily identify reasonable alternative hypotheses. However, a finding of constructive possession of controlled substances in nonexclusive occupancy settings generally is based on extensive and detailed factual evidence. *See Anderton,* 668 P.2d at 1264. Where the State fails to present evidence establishing a pivotal fact—in this case, that Layman was aware of Hobart and Gina's intent to sell drugs, i.e., that he was a knowing participant in the criminal enterprise, *see Fox,* 709 P.2d at 320—we must take special care to ensure that our review of the evidence does not encourage the indulging of "inference upon inference," or, worse, the indulging of inference upon assumption. *See George,* 481 P.2d at 667 (finding "no evidence as to whether the defendants ... took the truck and camper, save by way of inference ... and we believe that under the facts of this particular case, the jury had to indulge an inference upon an inference that could lead but to conjecture"); *see also State v. Franks,* 649 P.2d 3, 4 (Utah 1982) (reversing jury verdict of theft after noting "[a]lthough the elements of an offense may be established by direct or circumstantial evidence, the evidence adduced in this case was *de minimis* and therefore insufficient to support a conviction" and rejecting State's argument that "there is no evidence that the owner consented to defendant's control of the vehicle" where "burden is on the state to show unauthorized control, *not* on the defendant to show authorized control." (footnote omitted)).

■ The State carries the burden in criminal cases of proving each element of the charged crime beyond a reasonable doubt. In cases relying on constructive possession, that burden entails a presentation of extensive and detailed facts. *See Anderton,* 668 P.2d at 1263. Lack of such evidence may well make it impossible for the State to fulfill its duty to establish—beyond a reasonable doubt—the necessary nexus between a de-

---

**10.** In fact, Gina testified that she was not aware the pouch contained needles and that she had not injected herself with drugs on either that or the preceding day.

fendant and the contraband; any significant deficiency in evidence establishing the nexus almost always leaves room for those "reasonable hypotheses[es] of innocence" which "necessarily raise[ ] a reasonable doubt as to the defendant's guilt." *Hill*, 727 P.2d at 222 (citation omitted).

 In this case, the factual evidence "is inconclusive as to whether defendant knew of or possessed the [contraband]." *See Salas*, 820 P.2d at 1389. Most importantly, however, neither possibilities nor probabilities can substitute for certainty beyond a reasonable doubt. *See State v. Murphy*, 617 P.2d 399, 402 (Utah 1980) ("[C]riminal convictions may not be based upon conjectures or probabilities and before we can uphold a conviction it must be supported by a quantum of evidence concerning each element of the crime as charged from which the jury may base its conclusion of guilt beyond a reasonable doubt."); *see also Zertuche v. State*, 774 S.W.2d 697, 701 (Tex.Ct.App.1989)("[S]trong suspicions or mere probabilities are not sufficient.").

We are thus constrained to reverse Layman's convictions for possession of a controlled substance with intent to distribute and possession of paraphernalia.[11]

## CONCLUSION

We conclude that the trial court properly admitted and considered the toxicology reports and Deputy DeCamp's testimony in connection with Layman's conviction for driving under the influence. We thus affirm Layman's conviction on that charge.

We also conclude, however, that the circumstantial evidence relating to Layman's constructive possession of drugs and paraphernalia was insufficient to support his convictions on those charges. We thus reverse Layman's convictions for possession of a controlled substance with intent to distribute and for possession of paraphernalia.

ORME, J., concurs.

BENCH, Judge, concurring in part and dissenting in part:

I fully concur in the main opinion's treatment of the issues raised regarding Layman's conviction for driving under the influence. I dissent, however, from the reversal of Layman's convictions for possession of a controlled substance with intent to distribute and possession of paraphernalia. I believe the main opinion in this case will render it nearly impossible to prove constructive possession in the future. That message certainly will not be lost on those involved in the drug trade. Users will avoid prosecution by ensuring that contraband is never found on their persons, and dealers will simply hire others to carry their goods for them. In my opinion, constructive possession must remain a viable law enforcement tool.

The trial court was convinced beyond a reasonable doubt that Layman constructively possessed the contraband.[1] At least three of the evidentiary factors that tend to show

---

11. We cannot agree with the dissent's prediction that this result will destroy a "viable law enforcement tool" because potential criminal defendants will simply have others hold the contraband they intend to distribute. Those who are so "clever" will usually be reachable under other provisions of the Controlled Substances Act, such as permitting use of one's vehicle by persons distributing drugs, Utah Code Ann. § 58–37–8(2)(a)(ii) (Supp. 1997), or attempting or conspiring to distribute a controlled substance, *id.* § 58–37–8(6), even if they elude prosecution on constructive possession theories. Indeed, when asked about the applicability of other offenses to this case, the State admitted at oral argument that it opted not to charge Layman as an accessory to drug distribution, nor with any lesser included or other offenses.

While Layman may not have been oblivious to the illegal carryings-on of Hobart and Gina, and

may even have knowingly helped them effect their illegal distribution by driving them to the place of sale, this does not mean his involvement needs to be elevated to possession—constructive or otherwise—for him not to evade the reach of "viable law enforcement tool[s]." Other offenses established by the Legislature are adequate to address more tangential involvement in drug-dealing.

1. The main opinion correctly states our standard for reviewing a bench trial as "recit[ing] the facts from the record most favorable to the findings of the trial court." *State v. Moosman*, 794 P.2d 474, 476 (Utah 1990). However, when reciting the facts in this case, the main opinion ignores the findings of the trial court and consistently recites the facts most favorable to Layman.

constructive possession are present. Those factors include: 1) presence of the drug or paraphernalia in a place over which the defendant has special control, 2) incriminating behavior on the part of the defendant, and 3) the defendant's use of the drugs. *See, e.g., State v. Fox*, 709 P.2d 316, 319 (Utah 1985); *State v. Salas*, 820 P.2d 1386, 1388 (Utah Ct.App.1991). The trial judge recognized the presence of each of these factors in the evidence admitted at trial. *See, e.g., State v. John*, 586 P.2d 410, 412 (Utah 1978) (noting fact finders "may consider all of the facts affirmatively shown, as well as any unexplained areas, and draw whatever inferences may fairly and reasonably be drawn therefrom in the light of their own experience and judgment").

Regarding the first factor, the evidence showed that the contraband was transported in Layman's car. The evidence further showed that Layman drove his car from Ogden to Vernal (a distance of over 200 miles), and that the entire purpose of the trip was to sell drugs. The contraband remained in Layman's car throughout the trip, except when Layman, his father, and Gina divided the drugs in the Vernal motel room. The main opinion criticizes the State for not "exclud[ing] the possibility that Layman may have just been doing his father a favor by driving to Vernal, or that Layman may have agreed to drive because he wanted to see his sister, who apparently lives in Vernal and to whose house Layman was heading at the time of his traffic stop." Layman never raised those alternative hypotheses at the trial, but even if he had, there is no evidentiary basis for them. Gina testified that the traffic stop occurred at 3:00 a.m., and that Layman said he "wanted to get back to Salt Lake by 8:30 to pick up his son and take him to school." From the facts presented, it seems highly unlikely that a fact finder could conclude that Layman's purpose in driving to Vernal was merely to do his father a favor or to visit with his sister in the middle of the night. The evidence established that the purpose of Layman's trip was to sell drugs, and the trial court reasonably concluded that the drugs were present in a place over which Layman held special control.

Regarding the second factor, the arresting officer testified that while he was trying to discover what was in the pouch in the waistband of Gina's pants, Layman was standing at the rear of the car four to five feet away. Although there was no verbal exchange between Layman and Gina at the time, a very nervous Gina refused to relinquish the pouch to the officer or to tell him what was in it. While Gina looked nervously toward Layman for guidance, the officer saw Layman "shaking his head in a negative fashion back and forth." Thus, Layman's incriminating behavior demonstrated that he had some control over the drugs.

As to the third factor, the evidence showed that Layman had "a lot of methamphetamine" in his system when stopped by the officer. In concluding that Layman had used the contraband, the trial judge relied on the toxicology report, the blood test, and the testimony of the officers. The officers testified that Layman had fresh needle marks on his arms, which was consistent with the intravenous injection of the methamphetamine found in his system, and that the pouch contained several syringes, two of which had been used. Thus, Layman's use of the drugs also supports the finding of constructive possession.

In reversing Layman's convictions on the possession charges, the main opinion declares that the State failed to meet its burden to disprove every reasonable alternative hypothesis. However, the reasonable alternative hypothesis rule does not apply in cases where direct evidence is present. *See State v. Romero*, 554 P.2d 216, 219 (Utah 1976) ("[T]he circumstances must reasonably preclude every reasonable hypothesis of defendant's innocence, but this is not controlling when only part of the evidence is circumstantial."). In *Romero*, the defendant was identified by two eyewitnesses, which "constitute[d] direct evidence from which other facts could be presumed." *Id.* at 219–20. Much of the evidence in this case was likewise presented as direct evidence. The main opinion recognizes that "the direct evidence shows that Layman used his car to drive Hobart and Gina to Vernal." Layman must have recognized the presence of direct evi-

dence because he never asserted any alternative hypotheses at trial, nor does he ever mention the alternative hypothesis rule on appeal.

In any event, even if the alternative hypothesis rule did apply in this case, the State need only disprove alternative hypotheses raised at trial. The State's burden at trial is "proving beyond a reasonable doubt each element of an offense, including the absence of an affirmative defense once the defense is put into issue." *State v. Hill,* 727 P.2d 221, 222 (Utah 1986); *see also State v. Hamilton,* 827 P.2d 232, 236 n. 1 (Utah 1992) ("With regard to the 'no reasonable alternative hypothesis' theory upon which defendant proceeds, we note that this court has previously indicated that this is only one way of stating the prosecution's burden of proof, which requires proof beyond a reasonable doubt."). Only when the defendant asserts an alternative hypothesis, does the State bear the burden of disproving it. The main opinion recognizes that in *State v. Blubaugh,* 904 P.2d 688, 694–95 (Utah Ct.App.1995) (*cert. denied,* 913 P.2d 749 (Utah 1996)), the jury was presented with conflicting evidence supporting the different hypotheses. The main opinion also notes that in *John,* 586 P.2d at 412, the defendant presented an alternative hypothesis that conflicted with State's evidence. Because those alternative hypotheses were raised at trial by the defense, the State was able to present evidence to rebut them. In this case, however, none of the alternative hypotheses raised by the main opinion were raised by Layman at trial or even in his appellate brief. The main opinion imagines alternative hypotheses for the first time on appeal, and then proceeds to chastise the State for failing to rebut them. This approach to appellate review is unprecedented.[2]

Even if Layman had raised a reasonable alternative hypothesis at trial, "[t]he existence of one or more alternate reasonable hypotheses does not necessarily prevent the [fact finder] from concluding that defendant is guilty beyond a reasonable doubt." *Blubaugh,* 904 P.2d at 695; *see also State v. Carlson,* 635 P.2d 72, 74 (Utah 1981) ("Constructive possession may be proved by circumstantial evidence, so long as defendant's guilt is established beyond a reasonable doubt."). Furthermore, the supreme court has determined that the reasonable alternative hypothesis rule

> does not apply to each circumstance separately, but is a matter within the prerogative of the jury to determine from all of the facts and circumstances shown; and if therefrom they are convinced beyond a reasonable doubt of the defendant's guilt, it necessarily follows that they regarded the evidence as excluding every other reasonable hypothesis.

*State v. Schad,* 24 Utah 2d 255, 257, 470 P.2d 246, 247 (1970); *see also Blubaugh,* 904 P.2d at 695 (" 'The rules of circumstantial evidence do not require that the circumstances should to a moral certainty actually exclude every hypothesis that the act may have been committed by another person, but the hypothesis intended is a reasonable one consistent with the circumstances and facts proved.' ") (quoting *State v. Tanner,* 675 P.2d 539, 550–51 (Utah 1983)).

"When reviewing a bench trial for sufficiency of the evidence, we must sustain the trial court's judgment unless it is 'against the clear weight of the evidence, or if the appellate court otherwise reaches a definite and firm conviction that a mistake has been made.' " *State v. Goodman,* 763 P.2d 786 (Utah 1988) (quoting *State v. Walker,* 743 P.2d 191, 193 (Utah 1987)). "The reason for deference to the trial court is clear. We are wholly unable to glean from the typewritten record 'body language' factors that may have weighed heavily in the judge's decision." *State v. Castle,* 951 P.2d 1109, 1113 n. 3 (Utah Ct.App.1998); *see also State v. Shabata,* 678 P.2d 785, 791 (Utah 1984) (noting

---

**2.** The only Utah case that even arguably might support the main opinion is *State v. George,* 25 Utah 2d 330, 481 P.2d 667 (1971). *George* is a three-two split decision, with scant facts, which has never been cited in any reporter in its twenty-seven year existence. Hanging solely on *George,* the main opinion boldly asserts that the

trial court based its decision on "an inference upon an inference," without ever explaining how that standard applies in this case. In any event, I believe the trial court in this case drew permissible inferences from the direct evidence, and not from other inferences.

appellate court cannot substitute its view of evidence for that of fact finder). The trial court obviously discounted the inconsistencies in Gina's testimony and found that Layman was guilty of the drug charges beyond a reasonable doubt.

Unlike my colleagues, I believe the evidence that Layman constructively possessed the contraband is sufficient to sustain the trial court's judgment. I would therefore affirm all of Layman's convictions.