STATE of Utah, Plaintiff and
Respondent,

v.

Mohammad SHABATA, Defendant
and Appellant.

No. 18483.

Supreme Court of Utah.

Feb. 2, 1984.

Martin V. Gravis, Ogden, for defendant and appellant.

David L. Wilkinson, Atty. Gen., John Stephen Mikita, Salt Lake City, for plaintiff and respondent.

OAKS, Justice.

A jury convicted defendant of the second degree murder of Nabil Mansour, a fellow Libyan student at Weber State College. On appeal, defendant argues that he was denied a fair trial due to prosecutorial misconduct and that the trial court erred by failing to give a cautionary instruction on oral admissions, by failing to instruct the jury on the lesser included offense of manslaughter, and by denying defendant's motion for a new trial. We affirm.

The evidence against defendant was entirely circumstantial. We view it in the light most favorable to upholding the verdict. *State v. McCardell*, Utah, 652 P.2d 942, 945 (1982).

Mansour disappeared on July 9, 1981. On July 17, his badly decomposed body was found locked in the trunk of his car behind defendant's apartment in Ogden. On that same day, defendant was apprehended at the airport in Chicago en route to Libya.

At various times in 1981, defendant had requested different friends to purchase a pistol for him. A witness testified that he used defendant's money to purchase a .22 revolver and two boxes of plain lead bullets, which he placed in defendant's possession on May 9, 1981. Defendant asked the witness whether the gun was powerful enough to kill someone. In the days immediately preceding Mansour's disappearance, defendant borrowed and used Mansour's car. On the evening of July 8, he removed a number of articles from the trunk.

On July 9, 1981, at approximately 3:30 p.m., defendant telephoned Mansour and informed him that a relative of Mansour's had placed a call to defendant's apartment from out of the country and would call again at 5:00 p.m. Mohammed Al-Otaiby, Mansour's roommate, took the call at Mansour's apartment and spoke briefly with defendant. Nagme Gtata was also present when the call arrived. Shortly thereafter, Al-Otaiby and Gtata drove Mansour to defendant's apartment. Both identified the clothing found on Mansour's body as the clothing he was wearing at that time. Both testified it was the last time they saw Mansour alive. Gtata and Al-Otaiby returned to defendant's apartment twice within the next few hours to retrieve Mansour as prearranged, but there was no answer to their persistent knocking. Later that night, defendant briefly visited Al-Otaiby's apartment. Both Al-Otaiby and Gtata asked defendant about Mansour's whereabouts, and he replied that Mansour had never arrived at his apartment. They told defendant they had dropped him off at the apartment and received no response when they returned to collect him. Defendant replied that he must have been away from the apartment. When the two explained they had seen his car parked in front each time, defendant stated that he must have been taking a shower. Defendant's apartment contains only a bathtub with no shower apparatus. Defendant admitted that he received no return call from Mansour's relative.

On July 17, 1981, Ogden police were alerted to an offensive odor emanating from the trunk of what turned out to be Mansour's car, which was parked in the alley behind defendant's apartment. The trunk contained Mansour's body. An autopsy revealed that there were six bullet wounds to the skull, chest, back, and hand from a .22 weapon; the bullets were of plain lead.

During the ensuing investigation, police discovered a large stain on the carpet and padding of defendant's kitchen. Notwithstanding prior attempts to remove the stain, the residue in the padding was sufficient to identify it as human blood, although the type could not be determined. Police also found a .22 caliber bullet fragment that had pierced and fallen behind a kitchen drawer. When defendant was apprehended, his knapsack contained a set of keys to Mansour's car. Defendant testified he did not know how these keys got into his pack.

## I. WITHHOLDING OF EXCULPATORY EVIDENCE

Prior to trial, investigative sources and statements of third parties made both the prosecution and the defense aware that Al-Otaiby, a witness for the prosecution, had some involvement with illicit drugs. After the trial was over, Ogden police officers informed both counsel that at some time prior to trial Al-Otaiby had sold cocaine to an undercover officer and that his arrest was imminent.

Defendant had filed a pretrial motion for discovery requesting, *inter alia,* an order "requiring the plaintiff to inform the defendant of any and all evidence which would exonerate the defendant or which would demonstrate the defendant's innocence or be of value to the defendant in preparing for trial."[1] The prosecution provided no information about Al-Otaiby pursuant to this request because both parties had the same general knowledge before trial, *see State v. Jarrell,* Utah, 608 P.2d 218, 225 (1980), and because Al-Otaiby's alleged drug involvement did not bear on any issue in this case. The prosecutor had no knowledge of Al-Otaiby's sale of cocaine until after the trial, although it was known to police officers working on this case. Defendant argues that the prosecution's withholding of this evidence denied him a fair trial. We disagree.

1. In addition, both parties make reference in their briefs to an informal request by defendant for information of any criminal activities of the State's witnesses, but the record does not show such a request. Without the benefit of a request shown in the record, this Court cannot review whether the prosecution complied with the terms of a request.

At the outset, we stress that we are concerned with more than the *prosecutor*'s state of knowledge regarding the sale of cocaine or other drug activity by the witness. Information known to police officers working on a case is charged to the prosecution since the officers are part of the prosecution team. *Barbee v. Warden*, 331 F.2d 842, 846 (4th Cir.1964). Neither the prosecutor nor officers working on a case may withhold exculpatory evidence or evidence valuable to a defendant. *State v. Johnson*, 223 Kan. 119, 124, 573 P.2d 976, 980 (1977). *Cf. State v. Wright*, 87 Wash.2d 783, 557 P.2d 1 (1976).

The important question here is whether defendant was prejudiced by the prosecution's failure to disclose the witness's imminent arrest. For purposes of this question, the good or bad faith of the prosecutor is irrelevant. "If the suppression of evidence results in constitutional error, it is because of the character of the evidence, not the character of the prosecutor." *United States v. Agurs*, 427 U.S. 97, 110, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976).

The nature of the request determines the standard to be applied in determining whether the defendant has been denied a fair trial. The request in this case was a general "*Brady*-type" request for all exculpatory evidence or evidence "of value" to the defense. In this situation, as in the case where the defendant makes no request at all, the reviewing court must make its determination in the context of the entire record.

> [I]f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

*Codianna v. Morris*, Utah, 660 P.2d 1101, 1106 (1983) (*Codianna II*), *quoting from United States v. Agurs, supra*, 427 U.S. at 112–13, 96 S.Ct. at 2401–2402.

In the context of the entire record, the omitted evidence adds nothing to defendant's case and would not have raised a reasonable doubt as to his guilt. Al-Otaiby's testimony came after and mainly corroborated the testimony of another prosecution witness, Gtata. There was no material variance between the testimony of these two witnesses. Evidence of an independent event of drug trafficking would not have shown that Al-Otaiby used drugs, and even drug use is admissible only if it shows that it impaired the witness's perception of the events to which he testified. *Braham v. State*, Alaska, 571 P.2d 631, 647 (1977); *State v. Belote*, 213 Kan. 291, 295–96, 516 P.2d 159, 162–63 (1973). Defendant could not have used the omitted evidence to impeach Al-Otaiby's character or to show his propensity toward untruthfulness. Utah Rules of Evidence 22; *Rouse v. State*, Okl.Cr.App., 594 P.2d 787, 792–93 (1979); *State v. Humphrey*, 217 Kan. 352, 364, 537 P.2d 155, 164 (1975). The trial judge correctly applied the law when he limited cross-examination of Al-Otaiby and other witnesses to specific instances of drug use that might have affected the witness's ability to perceive. The omitted evidence would thus have had no bearing on the defendant's case.

Defendant argues that the evidence would have been relevant to show that Al-Otaiby had a motive to kill Mansour. Even when coupled with evidence that Al-Otaiby supported the deceased for one and one-half years and that Al-Otaiby had the nickname "Crazy Mohammed," this evidence is so speculative that it is impossible to see how it could have affected the outcome of the trial. "There is no violation of due process if the evidence demonstrates only a 'mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial ....'" *Codianna II*, 660 P.2d at 1106, *quoting United States v.*

*Agurs*, 427 U.S. at 109–10, 96 S.Ct. at 2400–2401.

## II. KNOWING USE OF PERJURED TESTIMONY

On cross-examination, defense counsel questioned Al-Otaiby about whether he "used" drugs, whether his nickname was due to his regular drug involvement, whether he had used drugs with the deceased, and whether his financial support of the deceased was drug-related. Al-Otaiby answered in the negative to all of the questions. The prosecution objected to further questioning on the issue of the witness's drug use, and the court sustained the objection.

■ Defendant argues that the witness's negative answers, coupled with the objection of the prosecutor, amount to the State's knowing use of perjured testimony. If so, this would obviously violate the defendant's right to due process under the United States and Utah Constitutions "if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Codianna II*, 660 P.2d at 1106, *quoting United States v. Agurs*, 427 U.S. at 103, 96 S.Ct. at 2397; *Walker v. State*, Utah, 624 P.2d 687, 690 (1981). This is true even when the State does not intentionally solicit the false evidence, but merely allows it to go uncorrected when it appears. *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959). Thus, if Al-Otaiby's testimony was false and the State knew it to be false, they had the duty to correct it. *Walker v. State*, 624 P.2d at 690.

■ Nothing in the record shows that the prosecution knew Al-Otaiby's testimony was false. Both the prosecution and the defense were aware of statements by third parties regarding Al-Otaiby's drug "involvement," but there is no evidence showing that Al-Otaiby "used" drugs. Most importantly, as demonstrated in point I, evidence of the witness's use of drugs was inadmissible in any event and therefore could not have affected the judgment of the jury.

## III. CAUTIONARY JURY INSTRUCTION REGARDING DEFENDANT'S ADMISSIONS

■ After his arrest in Chicago, defendant was interviewed by an FBI agent on two occasions. Each time, after being warned of his *Miranda* rights, defendant signed waiver forms and voluntarily agreed to answer questions. The agent dictated reports from his notes approximately five days after the interviews. Defendant was never given an opportunity to review or sign the transcribed reports. At trial, the agent testified from the reports regarding certain statements made by defendant that were inconsistent with his other statements and testimony in the case. At the close of evidence, in a conference on jury instructions, defense counsel stated:

> I object [that] an instruction is not given similar to the one in the California Criminal Jury Instructions, form 2.71 specifically the section that refers to the fact that evidence of an oral admission of the defendant ought to be viewed with caution. We believe that is a legitimate instruction and should be given in this case.

No proposed cautionary instruction appears in the record.

While a cautionary instruction may have been appropriate in this case, *see State v. Hymas*, 102 Utah 371, 377, 131 P.2d 791, 793–94 (1942), it cannot be said that the trial court erred in omitting it when defendant did not submit a proposed text. Utah R.Crim.P. 19(a) & (b); *State v. Day*, Utah, 572 P.2d 703, 705 (1977); *State v. Erickson*, Utah, 568 P.2d 750, 751 (1977).

Cases cited to the effect that a cautionary instruction is mandatory even without a specific request are distinguishable. The Oregon ruling in *State v. Swee*, 51 Or.App. 249, 624 P.2d 1108 (1981), is required by statute. The California courts have relied on their rule of civil procedure in engrafting this requirement in criminal cases. *People v. Bemis*, 33 Cal.2d 395, 399, 202 P.2d 82, 85 (1949), *citing People v. Dail*, 22

Cal.2d 642, 656, 140 P.2d 828, 836 (1943). Utah has no comparable statute or rule.

■■■■ We adhere to the general rule that it is not error to omit a particular jury instruction that has not been specifically requested, unless the failure denies the defendant a fair trial. *See State v. Baker,* 126 Ariz. 531, 617 P.2d 39 (1980). The application of this rule is especially appropriate where the instructions that *were* given generally covered the subject matter. In this case, the trial judge instructed the jurors that they were the sole judges of the facts and that it was their responsibility to determine the credibility of the witnesses and the value of their testimony. As in *State v. Brooks,* Utah, 638 P.2d 537, 542 (1981), we find the preliminary and final instructions, taken together, sufficiently conveyed to the jury the need for careful examination and comparison of all the evidence. Under these circumstances, the defendant was not denied a fair trial by the court's failure to give the cautionary instruction.

## IV. REFUSAL TO INSTRUCT ON MANSLAUGHTER

■■■ Defendant requested a jury instruction on manslaughter, a lesser included offense of second degree murder, and the trial court refused. Defendant cites this refusal as prejudicial error.

A defendant is not entitled to have the jury instructed on a lesser included offense unless there is "a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." § 76–1–402(4); *State v. Crick,* Utah, 675 P.2d 527 (1983), *State v. Baker,* Utah, 671 P.2d 152, 159 (1983). We must therefore look to the record to see if there was any basis in the evidence that would have allowed the jury to acquit defendant of second degree murder and convict him of manslaughter.

Defendant argues that the jury could reasonably have concluded that defendant killed Mansour in the heat of passion, which would constitute manslaughter. He relies on evidence suggesting that Mansour had an affair with defendant's wife. The only evidence to that effect was a tape recording of two individuals reciting a love poem and testimony that defendant had sent his wife back to Libya for committing an "unforgivable sin." This evidence does not justify a manslaughter instruction. There was no evidence that defendant ever knew of the tape; it was found in Mansour's personal effects after his death. Defendant sent his wife back to Libya in 1979, nearly two years before the murder. If the "unforgivable sin" was a love affair with Mansour, defendant had known about it too long for it to serve as justification for a killing "in the heat of passion."

All the evidence defendant presented at trial was to the effect that he had not caused Mansour's death and that he had never injured or even argued with him. Defendant's own theory of defense precluded the requested instruction on manslaughter. *State v. Baker,* 671 P.2d at 159–60. The evidence offered the jury only the choice between finding defendant innocent or guilty of the crime charged. This is not a situation like *State v. Petree,* Utah, 659 P.2d 443 (1983), where the evidence of defendant's intent was manifestly insufficient. Here the believable evidence showed that defendant purchased a gun and was concerned about whether it was powerful enough to kill a person. The victim's multiple gunshot wounds are evidence of his assailant's intent to kill. Defendant claimed that he did not commit the act, not that the killing was anything less than intentional. The trial court did not err in refusing defendant's manslaughter instruction.

## V. SUFFICIENCY OF EVIDENCE

■■■ There was no eyewitness or direct physical evidence linking defendant to the crime. The evidence was entirely circumstantial. On this basis, defendant moved for a directed verdict at trial and for a new trial after the jury found him guilty. He assigns error in the denial of these motions.

Defendant relies on the oft-stated rule that when the only evidence pointing to defendant's guilt is circumstantial a conviction cannot be sustained unless the evidence excludes every reasonable hypothesis other than the defendant's guilt. *State v. John,* Utah, 586 P.2d 410 (1978). But that case does not allow this Court to substitute its view of the evidence for that of the jury.

> The proper application of that rule requires that it be based upon what *the jury* regards as substantial and credible evidence. *This is necessarily true because in performing their duty as finders of the fact they are the exclusive judges of the credibility of the evidence.* In so doing they may consider all of the facts affirmatively shown, as well as any unexplained areas, and draw whatever inferences may fairly and reasonably be drawn therefrom in the light of their own experience and judgment.

*Id.* at 412 (citations omitted; emphasis added).

Against the ample evidence of guilt in this case, defendant argues that one of the witnesses incorrectly identified the clothing of the deceased, that the evidence of motive was inconclusive, and that the blood stain on defendant's carpet was not proved to match that of the victim. None of these arguments identifies a reasonable hypothesis alternative to defendant's guilt. They merely attack the reliability of some of the evidence.

We will not upset the jury's verdict unless there is no reasonable basis for it. *State v. Schad,* 24 Utah 2d 255, 257, 470 P.2d 246, 247 (1970). As in *State v. John, supra,* we hold upon review of the evidence and the inferences that can appropriately be drawn from it that the jurors could fairly conclude that the circumstantial evidence of this case indicated defendant's guilt beyond a reasonable doubt. There was no error in denying defendant's motion for a new trial.

Defendant's concluding arguments, that because of extensive pretrial publicity the trial court committed prejudi-cial error in denying his motions for a change of venue and to sequester the jury, are without merit. Defendant has shown no actual prejudice that resulted from the denial of either motion. *State v. Pierre,* Utah, 572 P.2d 1338, 1348–50 (1977).

The verdict and judgment of the trial court are affirmed.

HALL, C.J., and HOWE and DURHAM, JJ., concur.

STEWART, J., concurs in the result.