2007 UT 9

**STATE of Utah, Plaintiff and Appellee,**

v.

**Thomas Charles POWELL, Defendant and Appellant.**

**No. 20050810.**

Supreme Court of Utah.

Jan. 23, 2007.

Rehearing Denied March 9, 2007.

---

.

Mark L. Shurtleff, Att'y Gen., Matthew D. Bates, Asst. Att'y Gen., Kenneth R. Updegrove, Salt Lake City, for plaintiff.

Elizabeth Hunt, Salt Lake City, for defendant.

DURRANT, Justice:

## INTRODUCTION

¶ 1 In a jury trial, Thomas Powell was convicted of aggravated burglary, a first-degree felony, and attempted murder, a second-degree felony. In this direct appeal, Powell presents three arguments for reversal: (1) the district court's jury instruction for attempted murder erroneously allowed for a conviction based on a "knowing" or "depraved indifference" mens rea; (2) the district court erroneously denied his request to instruct the jury on the lesser included offenses of assault and aggravated assault; and (3) cumulative error undermined confidence in the verdict.

¶ 2 We reject each of Powell's arguments and affirm his convictions. Although the jury instruction regarding mens rea was erroneous, the error was harmless. Further, the district court correctly refused to grant Powell's request for a lesser included offense instruction because there was no rational basis in the evidence presented at trial for a verdict acquitting Powell of attempted murder and convicting him of assault or aggravated assault. Finally, Powell's cumulative error argument is without merit because the errors he asserts were not, in fact, errors.

## BACKGROUND

¶ 3 On the morning of January 12, 2003, Roselynn Ellis was alone in a room at Zion's Hotel in Salt Lake City. According to Ellis, Thomas Powell entered her room at around eight o'clock and offered to sell her some women's clothes that he carried in a bag. After Ellis refused to buy the clothes, Powell put a gun to her head and said, "[M]ove, bitch, and I'll kill you!" Ellis responded, "Do it," after which she heard the gun click and then felt a bullet land on her shoe. After the gun failed to fire, Powell beat Ellis with the gun multiple times, resulting in severe cuts to the back of her head. Ellis struggled with Powell and eventually forced him to flee the room. Ellis called a 9–1–1 dispatcher as she chased after Powell.

¶ 4 Powell ran outside and got into the driver's seat of a black Cadillac. Tamara Ross, a woman with whom Powell and Ellis were acquainted, was in the passenger's seat. As Powell and Ross attempted to drive away, Ellis tried to stop them by grabbing onto the driver's side door. Ellis heard Ross say, "Kill the bitch." Powell responded with "kill her, I'm trying," or "kill her, I can't even knock her out. . . ." While Ellis held onto the car, Powell pointed the gun at her head and pulled the trigger. Once again, the gun did not fire. As Ross and Powell sped away, Ellis was able to relay the Cadillac's license plate number to the 9–1–1 dispatcher. After returning to her room, Ellis noticed that her purse was gone.

¶ 5 Tamara Ross testified for the State as part of a plea agreement to avoid being charged with Powell. Ross testified that, while driving away, Powell saw, lying on the floor and loaded with bullets, the magazine clip belonging to the gun he used in the attack and stated, "That's why the mother f_____ didn't work!" According to Ross, Powell also told her that he pistol-whipped Ellis. She witnessed Powell remove items from Ellis's purse and throw the purse out of the car window.

¶ 6 Ross and Powell drove to Ross's daughter's house, where Powell put his bloody clothes in a garbage bag and gave the gun and the bag to Ross's great-nephew, Geoffrey Taylor. Powell told Taylor to get rid of them. Taylor and his cousin, Justin Ford, took the gun and the bag in the Cadillac and went to dispose of them.

¶ 7 When the police located and stopped the black Cadillac, Taylor told them that Powell had asked him to dispose of a gun and a bag of clothing. The police arrested Taylor and Ford and retrieved the gun from where Taylor had thrown it out of the car window. The police also discovered bloody handprints

on the window of the car. Police officers responding to Ellis's 9–1–1 call also inspected and photographed the disheveled hotel room. They collected the bullet from the floor and also gathered Ellis's bloody clothing. Later that day, the police arrested Powell at the home of Ross's daughter.

¶ 8 At trial, the above-stated facts were undisputed by Powell, except for the testimony that he was Ellis's assailant. Powell's sole defense was that he had been misidentified. Powell admitted driving Ross to the hotel in the Cadillac the night before the attack on Ellis, but claimed he was at the home of Ross's daughter on the morning the attack occurred.

¶ 9 To cast doubt on Ellis's ability to identify him, Powell brought forth evidence to show that Ellis was not wearing contacts at the time of the attack and had used alcohol and cocaine the night before the attack. When the police showed Powell to Ellis the day of the attack, she was unable to identify him as her assailant until she was brought within arm's length, heard his voice, and he was instructed to put on a hat.

¶ 10 Powell was convicted of attempted murder and aggravated burglary. He was acquitted of aggravated robbery. Powell now appeals his conviction from the district court. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(i).

## STANDARDS OF REVIEW

¶ 11 "Because jury instructions are statements of the law, we review challenges to jury instructions under a correctness standard."[1] Because Powell did not object to the attempted murder instruction at trial, however, we review it under the manifest injustice or plain error standard.[2]

1. Green v. Louder, 2001 UT 62, ¶ 14, 29 P.3d 638 (internal quotation marks omitted).

2. See Utah R.Crim. P. 19(e); State v. Casey, 2003 UT 55, ¶ 39, 82 P.3d 1106 (concluding that in most circumstances the "manifest injustice" standard of Utah Rule of Criminal Procedure 19(e) is synonymous with the "plain error standard" expressly provided in Utah Rule of Evidence 103(d)).

3. State v. Parra, 972 P.2d 924, 927 (Utah Ct.App. 1998).

¶ 12 A trial court's refusal to grant a lesser included offense instruction is a question of law, which we review for correctness.[3]

¶ 13 As part of his cumulative error claim, Powell alleges three separate errors: (1) that the district court erred in allowing the prosecutor to misstate the evidence during closing argument; (2) that the district court erred by not sua sponte excluding testimony relating to Powell's prior felony conviction; and (3) that the district court erred in allowing Detective Burningham to testify regarding Powell's alias without personal knowledge. Because Powell did not properly preserve his first and second claims of error with respect to his cumulative error claim at trial, we review them under the plain error standard.[4] Powell did preserve his claim of error regarding Detective Burningham's testimony. A trial court's "rulings on the admission of evidence ... generally entail a good deal of discretion."[5] Therefore, " '[we] will not reverse the trial court's ruling on evidentiary issues unless it is manifest that the trial court so abused its discretion that there is a likelihood that injustice resulted.' "[6]

## ANALYSIS

¶ 14 Powell appeals his conviction for aggravated burglary and attempted murder, raising three claims of alleged error. First, he claims that his conviction for attempted murder should be reversed and his case remanded for a new trial because the jury instruction erroneously allowed for a conviction of attempted murder based on a "knowing" or "depraved indifference" mens rea. While the jury instruction was erroneous under our decision in State v. Casey,[7] we hold the resulting error was harmless.

4. See State v. Dunn, 850 P.2d 1201, 1208 (Utah 1993).

5. State v. Pena, 869 P.2d 932, 938 (Utah 1994).

6. State v. Gomez, 2002 UT 120, ¶ 12, 63 P.3d 72 (quoting State v. Gentry, 747 P.2d 1032, 1035 (Utah 1987)).

7. 2003 UT 55, 82 P.3d 1106.

¶ 15 Second, Powell claims that it was reversible error for the district court to deny his request to instruct the jury on the lesser included offenses of assault and aggravated assault. While assault and aggravated assault are lesser included offenses of attempted murder in this case, we hold that there was no rational basis in the evidence presented at trial for a verdict acquitting Powell of attempted murder and convicting him of assault or aggravated assault. Therefore, the district court properly refused to grant Powell's request for a lesser included offense instruction.

¶ 16 Third, Powell claims his conviction should be reversed and his case remanded for a new trial because cumulative error undermined confidence in the verdict. But the errors Powell alleges were not, in fact, errors. Therefore, we affirm Powell's convictions.

## I. THE ERRONEOUS MENS REA JURY INSTRUCTION CONSTITUTED HARMLESS ERROR

¶ 17 Powell did not properly preserve his objection to the jury instruction for appeal. Indeed, Powell stipulated in advance to the instruction given to the jury. As a result, we evaluate Powell's claim of error for manifest injustice.[8] Review for manifest injustice requires us to engage in a plain error analysis.[9] We decline to discuss Powell's claim under the "invited error" doctrine because his claim fails under a plain error analysis in that the jury instruction at issue resulted in harmless error.

¶ 18 Under the plain error standard, we may reverse the district court on an issue not properly preserved for appeal when a party can show the following: "[1][a]n error exists; [2] the error should have been obvious to the trial court; and [3] the error is harmful. . . ."[10] Applying this standard, we conclude that the jury instruction was harmless error in that it resulted in no prejudice to Powell's substantive rights.

### A. An Error Exists

¶ 19 The district court erred by instructing the jury on attempted murder based on a "knowing" or "depraved indifference" mens rea.[11] The State concedes that the district court's instruction was erroneous. In *Casey*, we held that to convict a defendant of attempted murder under Utah's criminal attempt statute,[12] "the prosecution must show that the defendant acted intentionally."[13] We explicitly distinguished this from a knowing mens rea.[14] We held in *Casey* that neither a knowing nor a depraved indifference mens rea is sufficient to satisfy the intent requirement of Utah's criminal attempt statute.[15] Therefore, the district court's instruction allowing the jury to convict Powell of attempted murder based on a mens rea of intentional, knowing, or depraved indifference was error.

8. *See* Utah R.Crim. P. 19(e) ("Unless a party objects to an instruction or the failure to give an instruction, the instruction may not be assigned as error except to avoid manifest injustice.").

9. *Casey*, 2003 UT 55, ¶ 39, 82 P.3d 1106.

10. *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993).

11. The jury instruction at issue stated as follows:

Before you can convict the defendant, THOMAS CHARLES POWELL, of the offense of Attempted Criminal Homicide . . . you must find from all of the evidence and beyond a reasonable doubt each and every one of the following elements of that offense:
1. That on or about the 12th day of January, 2003, . . . THOMAS CHARLES POWELL, attempted to cause the death of Roselynn Ellis; and

2. That said defendant then and there did so: (a) intentionally or knowingly; or (b) acting under circumstances evidencing a depraved indifference to human life, he knowingly engaged in conduct which created a grave risk of death to Roselynn Ellis and thereby attempted to cause the death of Roselynn Ellis; and
3. That said defendant then and there did so unlawfully.

12. Utah Code Ann. § 76–4–101 (1999).

13. *Casey*, 2003 UT 55, ¶ 38, 82 P.3d 1106.

14. *Id.* ¶ 51 ("We hold that in order to convict a defendant of attempted murder, the prosecution must establish that the defendant acted intentionally; it is not enough that he or she acted knowingly.").

15. *Id.* ¶ 38; *see* Utah Code Ann. § 76–4–101 (1999).

## B. The Error Should Have Been Obvious

¶ 20 The erroneous jury instruction should have been obvious to the district court, given that our opinion in *Casey* provides clear direction on the mens rea required to convict a defendant of attempted murder.[16] Moreover, the facts in *Casey* were similar to those in Powell's case. Both cases involved challenges to the mens rea element of attempted murder instructions where the victim testified that the defendant attempted to kill him or her with a firearm that failed to fire.[17] Given *Casey's* recent, clear direction and its similarities to Powell's case, the erroneous jury instruction should have been obvious to the district court.

## C. The Error Was Not Harmful

¶ 21 Although the first two elements of the plain error analysis are satisfied, Powell's claim fails because the jury instruction was harmless error; in other words, it was an error not prejudicial to Powell's substantive rights. The third element of the plain error analysis requires that the party seeking review show that the error was harmful.[18] We have interpreted this as requiring more than the mere possibility that the outcome might have been different without the error, but a showing that, "absent the error, there is a reasonable likelihood of a more favorable outcome for the appellant, or phrased differently, our confidence in the verdict is undermined."[19]

¶ 22 In this case, the uncontested evidence demonstrated that Powell attacked Ellis with the specific intent to kill. Ellis testified that Powell put the gun to her head and threatened her life and that she then heard the

trigger click and felt a bullet fall on her foot. When the gun did not fire, Powell struck Ellis with the gun multiple times, causing severe lacerations to her head. Ross and Ellis also testified that, while driving away, Powell pointed the gun at Ellis's head and pulled the trigger. The evidence showing intent to kill is further strengthened by Ross's testimony that, upon finding the loaded magazine on the floor of the car, Powell exclaimed, "That's why the mother f____ didn't work!"

¶ 23 Powell presented no evidence contesting these details of the assault; his sole defense was that he had been misidentified as Ellis's assailant. The jury concluded, however, that Powell was in fact Ellis's assailant. As a result, the uncontested evidence would allow the jury only one reasonable conclusion: that Powell intentionally attempted to cause Ellis's death. Therefore, even if the district court had correctly instructed the jury that attempted murder requires specific intent to kill, there is no "reasonable likelihood of a more favorable outcome" for Powell.[20] Because this harmless error does not undermine our confidence in the verdict, Powell's claim fails under the plain error standard.

## II. POWELL WAS NOT ENTITLED TO RECEIVE A LESSER INCLUDED OFFENSE INSTRUCTION

¶ 24 The district court properly denied Powell's request to have the jury instructed on the lesser included offenses of assault and aggravated assault. A lesser included offense is defined in Utah Code section 76–1–402(3).[21] A defendant's request

---

16. *Casey*, 2003 UT 55, ¶ 51, 82 P.3d 1106.

17. *See id.* ¶¶ 2–5.

18. *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993).

19. *Id.* at 1208–09.

20. *See id.* at 1208.

21. A defendant may be granted a lesser included offense instruction when:

(a) It is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or
(b) It constitutes an attempt, solicitation, conspiracy, or form of preparation to commit the offense charged or an offense otherwise included therein; or
(c) It is specifically designated by a statute as a lesser included offense.
Utah Code Ann. § 76–1–402(3) (1999).

for a lesser included offense instruction is evaluated under the evidence-based standard set out in section 76–1–402(4).[22] We interpreted this standard in *State v. Baker*,[23] outlining a two-pronged test for determining when a defendant is entitled to a lesser included offense instruction.[24] Under this test, a defendant must show (1) that the charged offense and the lesser included offense have overlapping statutory elements and (2) that the evidence "provides a 'rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense.' "[25] In this case, Powell's claim fails under the second prong of the test.

### A. Attempted Murder and Assault or Aggravated Assault Have Overlapping Statutory Elements

■■■ ¶ 25 In order to be entitled to a lesser included offense instruction, a defendant must show that the charged offense and the lesser offense have overlapping statutory elements. This will depend on whether "there exist[s] some overlap in the statutory elements of allegedly 'included' offenses" and whether "the same facts tend to prove elements of more than one statutory offense."[26] The State concedes that there is overlap in the statutory elements of attempted murder and assault or aggravated assault and that evidence offered at trial tends to prove elements of both attempted murder and assault or aggravated assault. Therefore, in this case assault and aggravated assault are lesser included offenses of attempted murder.

### B. There Was No Rational Basis in the Evidence For a Verdict Acquitting Powell of Attempted Murder and Convicting Him of Assault or Aggravated Assault

¶ 26 Although assault and aggravated assault are lesser included offenses of attempted murder in this case, Powell is not entitled to have the jury instructed on these offenses because there was no rational basis in the evidence presented at trial for a verdict acquitting Powell of attempted murder and convicting him of the lesser included offenses of assault or aggravated assault.

■■■ ¶ 27 We have stated that the purpose of lesser included offense instructions is to give the defendant the full benefit of the reasonable doubt standard by "afford[ing] the jury a less drastic alternative than the choice between conviction of the offense charged and acquittal."[27] But we have also stated that lesser included offense instructions should not be used in such a way as to allow the jury to return a "compromise, or otherwise unwarranted verdict."[28] Moreover, we have held that a defendant's right to a lesser included offense instruction is limited by the evidence and only justified where there is a "rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense."[29] In determining whether the evidence supports a lesser included offense instruction, a trial court does not weigh the evidence, but only considers whether the record taken as a whole provides a rational basis to acquit the defendant of the greater offense while convicting him of the lesser included offense.[30] Additionally, a trial court views the evidence in the light most favorable to the defendant requesting the instruction.[31] The "light most

22. "The court shall not be obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." Utah Code Ann. § 76–1–402(4) (1999).

23. 671 P.2d 152 (Utah 1983).

24. *Id.* at 158–59.

25. *Id.* at 159 (quoting Utah Code Ann. § 76–1–402(4) (1999)).

26. *Id.* at 158–59.

27. *Id.* at 156 (citing *Beck v. Alabama*, 447 U.S. 625, 633, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980)).

28. *State v. Crick*, 675 P.2d 527, 531 (Utah 1983).

29. *Baker*, 671 P.2d at 159; *Crick*, 675 P.2d at 531.

30. *Baker*, 671 P.2d at 159 ("[I]f there is a sufficient quantum of evidence to raise a jury question regarding a lesser offense, then the court should instruct the jury regarding the lesser offense.").

31. *See id.* ("[W]hen the evidence is ambiguous and therefore susceptible to alternative interpre-

favorable" standard establishes a procedural safeguard that protects the defendant's right to the presumption of innocence, maintains the state's burden of proving the defendant's guilt, and reserves the responsibility of evaluating the weight and credibility of the evidence for the jury.[32]

¶ 28 In Powell's case, there was no rational basis in the evidence requiring a lesser included offense instruction. At trial, the uncontradicted evidence did not provide a rational basis for acquitting of attempted murder while simultaneously convicting of assault or aggravated assault. The State's evidence overwhelmingly demonstrated that Powell attacked Ellis with the specific intent to kill. Ellis testified that Powell put the gun to her head, threatened her life, and then attempted to fire the gun. When the gun did not fire, Powell beat Ellis with the gun multiple times. Ross and Ellis also testified that, while escaping in the car, Powell pointed the gun at Ellis's head and pulled the trigger. Ross testified that, upon finding the loaded magazine on the floor of the car, Powell exclaimed, "That's why the mother f____ didn't work!" As stated above, Powell presented no evidence contesting these details of the attack. His sole theory of the case was that he had been misidentified as Ellis's assailant. As a result, there was not sufficient evidence in the record to permit a reasonable jury to acquit him of attempted murder and convict him of assault or aggravated assault.

¶ 29 This is not to say that a defendant is required to testify, and it is also not to say that a defendant is obligated to present any evidence at trial. A defendant may simply point to ambiguities or inconsistencies in the evidence presented by the State and require the State to prove every element of the offense beyond a reasonable doubt.[33] Thus, the State errs in arguing that, under our decision in State v. Shabata,[34] if a defendant does not testify he may not request a lesser included offense instruction based on an alternative theory.

¶ 30 In Shabata, the defendant was charged with the murder of his friend.[35] He requested a lesser included offense instruction for manslaughter, which the trial court refused.[36] We upheld the trial court's refusal, explaining that "[a]ll the evidence [the] defendant presented at trial was to the effect that he had not caused [his friend's] death and that he had never injured or even argued with him." [37] We concluded that the defendant's "own theory of defense precluded the requested instruction on manslaughter." [38] The State suggests that Shabata stands for the proposition that a defendant may never receive a lesser included offense instruction if he argues that he was not the assailant and fails to produce any alternative evidence. This is not what Shabata holds. As a strategic matter, defense counsel may elect not to put on any evidence or not to offer an alternative theory of the case. It is still possible that evidence presented solely by the State will allow for a lesser included offense instruction. In Shabata, there was simply no rational basis in the evidence presented at trial requiring a lesser included offense instruction.

¶ 31 In this case, there were no ambiguities or inconsistencies in the State's evidence. Having opted to rely solely upon the misidentification theory, Powell made no attempt to contradict the evidence. Even so, Powell would not have been precluded from receiving a lesser included offense instruction on a

tations, and one alternative would permit acquittal of the greater offense and conviction of the lesser, a jury question exists and the court must give a lesser included offense instruction at the request of the defendant.").

**32.** *State v. Dahlin*, 695 N.W.2d 588, 596 (Minn. 2005).

**33.** *See In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (holding that the Due Process Clause of the Fourteenth Amendment protects defendants against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime).

**34.** 678 P.2d 785 (Utah 1984).

**35.** *Id.* at 786.

**36.** *Id.* at 790.

**37.** *Id.*

**38.** *Id.*

different theory than the one he relied upon, if there had existed a sufficient basis in the record to support an alternative jury instruction. But similar to *Shabata*, there was no such evidence in this case. The State's evidence overwhelmingly supported an attempted murder conviction. Thus, we hold that there was no rational basis in the evidence presented at trial for the district court to grant Powell's request for a lesser included offense instruction for assault or aggravated assault.

¶ 32 Powell argues that the jury could have potentially disbelieved the witnesses' testimony and on that basis could have acquitted him of attempted murder and convicted him of assault or aggravated assault. In support of this, Powell points out that Ellis had consumed alcohol and drugs the night before the attack and that Ross received a plea bargain from the State in return for her testimony, thus undermining their credibility. But these attacks went only to the witnesses' credibility generally. There is no basis in the record "upon which the jury could have simultaneously credited the testimony necessary to establish the lesser offense" and "rejected the very same testimony insofar as it established the greater offense...." [39] In other words, there was no rational basis in the evidence for the jury to accept the witnesses' testimony as establishing assault or aggravated assault while rejecting that same testimony as establishing attempted murder. It is possible that "[t]hrough contradictory testimony, cross-examination, or an element of the prosecution's case, the defense may establish a rational basis for the jury to infer that some portions of discrete items of evidence are credible and other portions of those same items are not credible." [40] However, Powell did not do so.

¶ 33 In cases such as the one before us, where the defendant's request for a lesser included offense instruction is based on sheer speculation, the defendant is not entitled to a jury instruction.[41] Instructing the jury as to lesser included offenses for which there is no support in the evidence would "allow the jury to preempt the prosecutor's function in charging offenses and the judge's function in imposing sentences." [42]

## III.  POWELL'S CUMULATIVE ERROR CLAIM FAILS

¶ 34 Powell asserts a claim of prosecutorial misconduct and two claims of evidentiary error. He argues that the cumulative effect of these errors undermines confidence in the verdict and requires us to grant a new trial. Powell's cumulative error claim is meritless, however, because none of the errors he asserts were, in fact, errors.

### A.  There Was No Prosecutorial Misconduct

¶ 35 On the record before us, there is no evidence of prosecutorial misconduct. Powell contends that the prosecutor misstated the evidence when he told the jury in closing argument that Powell attempted to shoot Ellis "four times" and racked the slide of the gun in order to load a new round into the chamber. Powell argues that the evidence does not support these conclusions and, therefore, the statements undermined the fairness of his trial because they drew jurors' attention to facts not in evidence. Because Powell did not object to these statements at trial, we review for plain error.[43]

¶ 36 Generally, a claim of prosecutorial misconduct as to a closing argument has two components. First, the defendant must demonstrate that the prosecutor called to the

---

39. *People v. Negron*, 91 N.Y.2d 788, 676 N.Y.S.2d 520, 699 N.E.2d 32, 35 (1998).

40. *United States v. Moore*, 108 F.3d 270, 274 (10th Cir.1997); *see People v. Scarborough*, 49 N.Y.2d 364, 426 N.Y.S.2d 224, 402 N.E.2d 1127, 1131 (1980) (holding that potential for jury disbelief may be a factor in determining whether to give a lesser included offense instruction where the reliability of the testimony is compromised "by the introduction of contradictory proof or by disclosure on cross-examination of faulty memo-

ry, bias, lack of adequate vantage point for observation and the like").

41. *Scarborough*, 426 N.Y.S.2d 224, 402 N.E.2d at 1132.

42. *State v. Crick*, 675 P.2d 527, 532 (Utah 1983).

43. *See State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993).

jurors' attention "matters which they would not be justified in considering in determining their verdict." [44] Second, the defendant must show that the jury was "probably influenced by those remarks." [45] We have stated, however, that counsel for both sides have "considerable latitude" in their arguments to the jury; they "may discuss fully their viewpoints of the evidence and the deductions arising therefrom." [46]

¶ 37 In this case, we conclude that the district court did not plainly err in not sua sponte striking the prosecutor's remarks regarding the number of times Powell pulled the trigger. While the evidence is unclear as to how many times Powell pulled the trigger, it is clear that he pulled it multiple times. Ellis testified that she heard a "clicking" noise in the hotel room. Ellis and Ross also testified that Powell pulled the trigger again while in the car. In addition, Powell's racking the slide of the gun may have indicated an attempt to inject another round into the chamber. Thus, the State's evidence shows, at the very least, that Powell pulled the trigger of the gun on two occasions, both times aiming the firearm directly at Ellis's head. In addition, a bullet, which was later recovered by the police, did fall from the gun and land on Ellis's foot, indicating some type of movement in the chamber, whether it was by racking the slide of the gun or not. In light of this evidence, even if the State's argument regarding the number of times Powell pulled the trigger was not fully supported by the record, it is highly unlikely that the jury was influenced by the arguably unsupported portion of this argument in arriving at their verdict.

B. *The District Court's Failure to Sua Sponte Preclude Powell's Testimony That He Had Been Convicted of a Felony Was Not Plain Error*

¶ 38 Powell argues that the district court erred in failing to exclude evidence of his prior felony conviction. The evidence of that conviction was admitted through the State's cross-examination of Powell. The State asked, "Have you ever been convicted of a felony?" Powell replied, "Yes," and the State did not inquire further. Powell argues that in failing to preclude this testimony, the district court violated Rule 609 of the Utah Rules of Evidence. Because Powell's counsel did not object to the State's question, we review for plain error.

¶ 39 Rule 609 specifies the manner in which criminal convictions may be used for "the purpose of attacking the credibility of a witness." The rule distinguishes among criminal convictions based on both their nature and their attendant punishment. Subsection (a)(1) provides that evidence that an accused has been convicted of a crime punishable by death or imprisonment in excess of one year "shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect." Subsection (a)(2) provides that "evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of the punishment."

¶ 40 The record includes no indication of whether the felony conviction at issue involved dishonesty or false statement. If it was such a conviction, it was admissible whether or not its probative value outweighed its prejudicial effect. If it was not such a conviction, it was admissible only if it was punishable by imprisonment in excess of one year *and* its probative value outweighed its prejudicial effect. The record includes no indication of the length of punishment associated with the crime at issue, although the fact that it was a felony suggests that it was in excess of a year, at least if it was a Utah conviction.

¶ 41 Where a weighing of probative value versus prejudicial effect is required, we look to the factors we set forth in *State v. Banner:* [47]

---

44. *State v. Troy,* 688 P.2d 483, 486 (Utah 1984) (citations and internal quotation marks omitted).

45. *Id.* (citations and internal quotation marks omitted).

46. *Dunn,* 850 P.2d at 1223.

47. 717 P.2d 1325 (Utah 1986).

[1]  the nature of the crime, as bearing on the character for veracity of the witness.

[2]  the recentness or remoteness of the prior conviction . . . .

[3]  the similarity of the prior crime to the charged crime, insofar as a close resemblance may lead the jury to punish the accused as a bad person.

[4]  the importance of credibility issues in determining the truth in a prosecution tried without decisive nontestimonial evidence . . . .

[5]  the importance of the accused's testimony, as perhaps warranting the exclusion of convictions probative of the accused's character of veracity . . . . [48]

¶ 42 The case before us is not well-suited to a *Banner* analysis. The question and answer at issue here included no information with respect to the first three *Banner* factors. Powell testified only that he had been convicted of a felony, without disclosing the nature, timing, or facts of the crime. While, as to the last two factors, credibility issues and the accused's testimony were important, without any evidence regarding the first three factors, a full *Banner* analysis is precluded.

■ ¶ 43 Thus, it is unclear from the record that a *Banner* analysis was even required as to the unspecified felony at issue. And, if it was, it is unclear, given the paucity of information about the felony, what result a *Banner* analysis would yield. Under these circumstances, even if we assume the district court erred in failing to sua sponte preclude Powell's testimony that he had been convicted of a felony, the error cannot be said to constitute plain error. To satisfy a plain error standard, the error must be obvious to the trial court.[49] If there was an error here, it was far from obvious.

¶ 44 Nor did evidence of the conviction unduly prejudice Powell. The jury knew only that Powell had been convicted of a single felony. The jury did not know the nature of the crime or any of the details. It is unlikely that reference to a single, unnamed felony conviction so prejudiced the jury against Powell that it altered the outcome of the trial where there was significant evidence implicating Powell's involvement.

■ ¶ 45 Powell further argues that his counsel was ineffective in failing to object to the prosecutor's question. To establish a claim of ineffective assistance of counsel, the defendant must prove two elements. First, he must demonstrate that specific acts or omissions of counsel fell below an objective standard of reasonableness.[50] Second, he "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." [51]

■ ¶ 46 In proving that counsel's representation fell below an objective standard of reasonableness, the defendant must rebut "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." [52] "We give counsel wide latitude to make tactical decisions and will not question such decisions unless we find 'no reasonable basis' for them." [53]

■ ¶ 47 The decision by Powell's counsel not to object was reasonable. While the record includes no specifics regarding the felony that was the subject of cross-examination, it does include information about Powell's criminal record that sheds light on why that cross-examination may have been so generic. According to the presentence investigation report, Powell has a lengthy criminal record, including in the last ten years a felony theft conviction and a felony escape

48.  *Id.* at 1334 (citations omitted).

49.  *Dunn*, 850 P.2d at 1208.

50.  *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

51.  *Id.* at 694, 104 S.Ct. 2052.

52.  *Id.* at 689, 104 S.Ct. 2052 (internal quotation marks omitted).

53.  *Taylor v. Warden*, 905 P.2d 277, 282 (Utah 1995) (quoting *Fernandez v. Cook*, 870 P.2d 870, 876 (Utah 1993)).

conviction. He also has a theft by deception conviction. The State could have sought to admit all of these convictions under Rule 609. In light of what could have come in, defense counsel's failure to object may have been a strategic concession made in order to prevent a further elaboration of Powell's criminal record. Moreover, as noted, and as further supported by the possibly strategic bases for counsel's nonobjection, Powell was not prejudiced by the admission of this single generic felony.

### C. Evidence Regarding Powell's Alias Was Properly Admitted

¶ 48 The district court did not abuse its discretion in allowing Detective Burningham to testify regarding Powell's alias. At trial, Powell testified that he did not give the alias James Johnson to police when he was booked. The State then called Detective Burningham and questioned him regarding the name Powell used. Burningham was the case manager who compiled the reports surrounding Powell's arrest. Burningham testified that he was "told" by other officers that Powell gave the name James Johnson when he was booked; Burningham was not present at the time of the booking. Burningham used this information, as well as reports written by the officers, to compile his own report. During his testimony, Burningham was handed a copy of his initial report by the State and testified that the name written in his report, which Powell used at booking, was James Johnson.

¶ 49 Powell made two objections to Detective Burningham's testimony. He first objected that Burningham's testimony was given without personal knowledge; this objection was overruled. Powell next objected to the testimony as hearsay, which objection was also overruled, although Powell does not now raise this issue on appeal. While acknowledging that it would be improper for Burningham to testify as to the name under which Powell was booked, the State claims that Burningham merely testified as to the name he was "told" by other officers that Powell used.

¶ 50 An examination of the testimony reveals the State to be correct. The prosecutor questioned Burningham as follows:

Q: All right. In this specific case, what was the name that was given to the officers, that you got in booking for the individual that's sitting right there when you—

. . . .

Q: . . . What is the name that was used?

A: I—I understood and *I was told* that the name used and booked under was James Johnson.

. . . .

Q: I hand you—do you recognize that particular sheet of paper that I've handed you?

A: Yes, sir.

Q: What is that?

A: That is part of the initial report.

Q: And what is the name that's written on there that you presented the DA's office?

A: For the arrestee, it lists the name as Johnson, James

(emphasis added).

¶ 51 Powell concedes on appeal that Burningham's testimony was not hearsay. Thus, we will look solely at whether the district court abused its discretion in overruling Powell's objection based on lack of personal knowledge. Under Rule 602 of the Utah Rules of Evidence, a witness may testify only to matters of which he has personal knowledge.[54] Powell argues that detective Burningham had no personal knowledge of whether Powell was booked under the name James Johnson. Detective Burningham had personal knowledge, however, regarding what he was "told" by the police officers. Burningham also had personal knowledge regarding the initial report that he made, in which he recorded the alias Powell gave to police. Under Rule 602, he could testify to those matters. Thus, the district court properly overruled Powell's objection.

---

**54.** Utah R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

¶ 52 Even if admission of the testimony were error, it would be harmless because Powell's use of an alias was already a matter of judicial record. At an arraignment on May 17, 2004, Judge Atherton called the case of "Thomas Charles Powell." Powell answered, "Yes." Judge Atherton then asked, "Are you also known as James Johnson?" Powell replied, "Yeah, they say that." The judge then clarified, "Okay. That's the same person, right?" Powell responded, "Yeah." Thus, even had the district court sustained the hearsay or lack of personal knowledge objection, the State would have had little trouble getting Powell's alias before the jury, and as a result, any error would be harmless.

### CONCLUSION

¶ 53 We reject all three of defendant Thomas Powell's claims on appeal. First, the erroneous jury instruction given at trial constituted harmless error. Second, the district court properly refused to grant Powell's request for a lesser included offense instruction. Third, there was no cumulative error. Accordingly, we affirm Powell's two felony convictions in the district court for aggravated burglary and attempted murder.

¶ 54 Chief Justice DURHAM, Associate Chief Justice WILKINS, Justice PARRISH, and Justice NEHRING concur in Justice DURRANT'S opinion.