Justice LEE,
dissenting:
I 28 I respectfully dissent from the majority's determination of reversible error in the district court's failure to give an instruction clarifying the mens rea implications of the elements of the offense set forth in Utah Code section 41-62a-210(1)(a). Perhaps such an instruction would have aided the jury somewhat, by clarifying the import of the elements of (a) "receiv{ing] a visual or audible signal from a peace officer," and (b) "attempt[ing] to flee or elude a peace officer by vehicle or other means." Urax Cop® § 41-6a-210(1)(a) But the question presented is not whether the judges of this court *1148 would have accepted a request to give such an instruction. It is whether the district judge's failure to give the instruction was error, and whether any such error would have made any difference to the outcome.
[ 29 I would affirm on two grounds. First, I would uphold the jury instruction as given on its own terms, as the ordinary meaning of the terms of the instruction adequately conveyed a fair understanding of the mens rea issues identified by the majority. Second, I would hold that any purported error in the instruction as given was harmless, having no " 'reasonable likelihood " of affecting the outcome of the proceedings. State v. Powell, 2007 UT 9, ¶ 21, 154 P.3d 788.
30 It is an over-generalization to say that "[a] trial court should provide the jury with a mens rea instruction when a criminal statute includes terms that have mens rea implications." Supra ¶ 15. Our cases seem to me. to stand for a more modest principle. Instead of broadly mandating separate mens rea clarifications of all "terms that have mens rea implications," we have simply required that the jury be fairly and accurately instructed on all elements (whether mens rea or actus reus ) of any offense.[1] And we have hastened to add that "the trial court does not err in refusing to give a requested instruction if the point is properly coveréd in other instructions presented to the jury." [2]
[ 31 The instruction given in this case easily satisfied these standards. First, the instruction conveyed the requirement of knowledge of the peace officer's signal. It did so by requiring the jury to find that the defendant "received a visible or audible signal from a peace officer." As the majority acknowledges, the knowledge requirement is inherent in the common, ordinary understanding of the verb receive. See supra ¶ 20 (citing WeBsrEr's New Counrer DICTIONARY 1195 (2007), defining "receive" as "apprehend mentally; get knowledge of or information about").
' 32 Second, the instruction also conveyed the requirement of intent to flee or evade. That requirement was again inherent in the common, ordinary meaning of the terms of the district court's instruction. Here the operative terms are "attempt," which "is 'to try, solicit, or 'to make an effort to do, get, have, etc.," supra ¶ 21 (citing NEw Dictionary 91 (2007)); and "flee" or "evade," which mean, respectively, "run away or escape," and "avoid or escape from by quickness, cunning, etc.," supra 123 (citing Webster's New Counnrar DICTIONARY 540, 463).
1 383 The elements of "receiv[ing]" a signal and of "attempt[ing] to flee or elude a peace officer" thus gave the jury a fair and aceu-rate understanding of the mens rea elements of the offense of failure to respond under Utah Code section 41-6a-210. The majority's analysis only confirms this conclusion. It does so by reciting the above definitions of the operative terms of the statute-receive, attempt, flee, and evade-and by conceding that these terms accordingly conveyed the essential notion of the knowledge and intent elements of the offense in question. Supra ¶ 20 (conceding that "a juror would likely have perceived that the 'receives a visual or audible signal from a peace officer' element of the offense requires knowledge of the peace officer's signal"); id. ¶ 23 (acknowledging that "the 'attempt to flee or elude' element implicates an intentional mens rea"). That should be the end of our analysis. The jury was fairly instructed, and we should affirm the conviction on that basis.[3]
*1149 34 The majority's justifications for overturning the jury verdict are unpersuasive. As to the knowledge implications of the instruction given to the jury, I accept that we do not know for certain whether a "juror would recognize the significance of" the statutory "knowledge requirement as an essential mens rea element." Supra ¶ 20 (emphasis added). But the majority has not identified any sense in which the ordinary meaning of "receive" would fall short of giving the jury a full sense of the knowledge element of the offense in question. Instead it has vaguely suggested that the jury might mot get it, and concluded that "(thus it was error" not to provide further explanation in a more detailed instruction. Supra ¶ 20. This turns the operative burden of persuasion on its head. ©
T 35 To succeed in establishing a basis for reversal, the defendant bears the burden of demonstrating that the instruction in question falls short of the goal of fairly and accurately stating the law (and of indicating that the error is likely to have made a difference in the outcome, a separate problem discussed below, infra ¶ 13). Powell, 2007 UT 9; ¶ 21, 154 P.3d 788. The court inverts that standard by reversing on the basis of a vague insistence that the jury might not have "recognize[d] the significance" of the instruction's reference to "receiv{ing] a visual or audible signal from a peace officer." Supra ¶ 20. I dissent from a decision that seems to me to ignore our cases regarding the operative burden of persuasion.
36 The majority's analysis of the intent implications of the instruction in question is similarly problematic. If the ordinary meaning of "attempt to flee or elude .:. requires that the actor leave in an effort to escape or avoid a peace officer," supra ¶ 23, then defendant Bird has failed to carry his burden of proof that the instruction as given fell short of giving a fair and accurate description of the law to the jury. That is a sufficient basis for affirming the jury verdict in this case.
1 37 The court does not clearly identify any precise shortcoming of the infert implications of the instruction in question. But in discussing the statutory term attempt, the court appears to draw a distinction between (a) "(tlhe common dictionary definition of attempt," as "to try, solicit, or to make an effort to do, get, have, etc."; and (b) the legal sense of the inchoate crime of attempt, which requires "a substantial step toward commission of the crime." Supra ¶ 21 (internal quotations omitted). And in discussing this distinction, the court suggests that "the statutory meaning of attempt connotes a conscious decision with more specific action than does the common dictionary definition of the term." Supra ¶ 21 (emphasis added).
1 38 If the majority is suggesting that the "substantial step" element of the inchoate erime of attempt should have been included in the instruction as given, then I dissent from that conclusion. For one thing, I see no basis for treating the failure to stop offense as inchoate. It is not defined in terms of a "substantial step" toward a choate offense. It appears instead to be a crime in itself. So there is no reason to read the "substantial step" sense of an inchoate attempt into this state. In any event, that notion of attempt was neither preserved in the district court nor argued on appeal. So if the failure to instruct on "substantial step" is the shortcoming that the court sees in the * instruction in question, it is a defect of the court's own imagining. And if that is not the problem, then the court has failed to identify any distinction between the common, ordinary sense of the terms of the district court's instruction and the mens rea requirements delineated in the majority opinion.
139 Finally, even assuming some minor, unarticulated distinction between the ordinary meaning of "receiv{ing] a visual or audible signal" and the knowledge required by the majority, or between "attempt[ing]l to flee or elude a peace officer" and the intent requirement set forth by the court, we should still affirm Bird's conviction on harmless error grounds. Under settled law, Bird bears the burden of establishing that any error in the instruction in question was reasonably likely to affect the outcome in this case. See State v. Vargas, 2001 UT 5, ¶ 39, 20 P.3d 271 *1150 (stating that it is the defendant's burden to establish that the error is harmful). In my view he has utterly failed to carry that burden. Given the common, ordinary sense of the operative terms of the instruction given to the jury in this case, I would also hold that any arguable shortcoming in failing to elaborate on the mens rea elements of the offense was harmless.

. See State v. Maestas, 2012 UT 46, ¶ 148, 299 P.3d 892 (explaining that we review jury instructions "in their entirety and will affirm when the instructions taken as a whole fairly instruct the jury on the law applicable to the case"); State v. Roberts, 711 P.2d 235, 239 (Utah 1985) (stating "'the general rule" that "an accurate instruction ' upon the basic elements of an offense is essential").

. State v. James, 819 P.2d 781, 799 (Utah 1991).

. See Philpot v. State, 268 Ga. 168, 486 S.E.2d 158, 160-61 (1997) (dismissing defendant's argument that the trial court improperly failed to define terms "knowingly" and "great risk" because "the terms ... are ordinary terms found in common usage and understood by people of common and ordinary experience ... and need not be specifically defined in the charge to a jury"); People v. McCleod, 55 Cal.App.4th 1205, 1216, 64 Cal.Rptr.2d 545 (1997) (upholding the inclusion of the common term "residence" in a jury instruction without additional elaboration, *1149 stating that a court "need only give explanatory instructions when terms used in an instruction have a technical meaning peculiar to the law" (internal quotation marks omitted)).